# Sarnis *v.* The Philadelphia and Reading Coal and Iron Company.

*Workmen's compensation—Final receipt—Subsequent development of injury—Setting aside receipt—Evidence—Sufficiency.*

As section 434 of the Workmen's Compensation Act [1919, P. L. 669] provides that a final receipt may be set aside if executed by mistake, a finding of fact to that effect supported by evidence is binding on appeal.

Evidence considered that loss of eye resulted from injury.

Argued December 4, 1922. Appeal No. 21, Oct. T., 1922, by defendant, from judgment of C. P. Schuylkill Co., March T., 1921, No. 165, and Sept. T., 1921, No. 55, affirming decision of Workmen's Compensation Board in case of Anthony Sarnis v. The Philadelphia and Reading Coal and Iron Company. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed.

Appeal from decision of Workmen's Compensation Board, setting aside final receipt and modifying compensation agreement. Before BERGER, J.

The facts are stated in the opinion of the Superior Court.

The court sustained the decision of the Workmen's Compensation Board. Defendant appealed.

*Error assigned,* inter alia, was judgment, quoting it.

*John F. Whalen,* and with him *George Ellis,* for appellant, cited: Fink v. Sheldon Axle and Spring Company, 270 Pa. 476; Morgan v. Philadelphia & Reading Coal & Iron Company, 273 Pa. 255.

*Roger J. Dever,* for appellee, cited: Parlovich v. P. & R. C. & I. Co., 76 Pa. Superior Ct. 86-90; Stahl v. Watson Coal Co., 268 Pa. 452.

OPINION BY LINN, J., December 14, 1922:

Appellant raises two questions: 1. Was the compensation board justified in setting aside the final receipt? 2. Was there sufficient evidence that the injury caused the loss of the use of claimant's eye?

1. We cannot assent to the contention that there is no evidence that the receipt was signed under a mistake of fact or law.

Claimant was struck in the right eye by a piece of wood on March 30, 1920. He was treated by appellant's physicians. On April 24, 1920, the parties signed an agreement for compensation, specifying inability to state how long the incapacity would last; the board approved the agreement. On August 24, 1920, claimant filed a petition to modify the agreement, alleging "the injury has affected my right eye to an extent that I only have 2/200 vision. Should be compensated for the loss of an eye." On September 8, 1920, appellant answered that petition and denied its averments. That issue came on for hearing November 10, 1920, before the referee. Claimant testified:

"Q. Before that timber hit you what was the condition of that eye?

"A. I could see out of that eye but somewhere in 1919 my eye was injured and after that time then I couldn't see as well as before.

"Q. You couldn't see as well as you could before 1919?

"A. Yes, sir.

"Q. After the first injury could you see well enough with that eye to work?

"A. Yes, sir.

"Q. How is your eye now?

"A. I can't see nothing with it. When I was to see Dr. Halberstadt I could see a little but now I can't."

Dr. Halberstadt, one of appellant's physicians, treated claimant's eye April 4th, 15th, 17th, 22d and May 18th. Immediately following the injury he was also treated for about two weeks by Dr. McDonald, a phy-

sician employed by appellant. Claimant says this physician advised "he couldn't cure my eye and I should go to Pottsville," "to see a doctor" there. Claimant testified Dr. Halberstadt "said 'I will try to cure your eye' and he told me to stay away from work." He returned to work on June 1st, but soon left because he quarreled with his boss. After the injury, he was examined at the Wills Eye Hospital in Philadelphia, and the record contains a letter from the hospital to the referee dated December 9, 1920, stating claimant "was a clinic patient here 4-27-20 and found to have a scar over the center of cornea due from an accident a short time before. He had very little vision left in the eye." Dr. Corson testified he examined claimant on July 13, 1920, and found he had 2/100 vision; that his sight in that eye could not be improved and attributed the condition to the accident in words, presently to be quoted. With that evidence supporting the conclusion of the board as to the condition of claimant's eye when the evidence was taken, we are bound by the finding.

We come, then, to a phase of the case which perhaps misled the referee and created a difficulty more apparent than real. The receipt in the record bears no date of execution or delivery; it purports to be a final receipt signed by claimant on a printed form apparently in use by appellant, by which "for 1st half of July, 1920," he acknowledges the receipt of two dollars compensation for one day "in full of above account to 6-4-20, being the final payment due under the above agreement, [agreement No. 950208] disability having terminated on said date." It bears the audit stamp of appellant's paymaster's office, dated July 23d, and is rubber stamped "Paid November 13, 1920"; as there is printed on it, "Not valid until stamped by the paymaster" and as the audit stamp is dated July 23d, we may perhaps infer that it was not valid until that date; but it does not appear when claimant collected it; the stamped date November 13, 1920, obviously not proving that in the

circumstances disclosed. The receipt does not appear to have been offered in evidence at the hearing on November 10th; no one was interrogated about it; it is in the record certified to us and has stamped upon it "received November 21, 1920. Workmen's Compensation Bureau." Notwithstanding that, it appears to have been before the referee at the hearing on November 10th, three days before it was stamped paid, for the record shows that at the hearing the parties stipulated that "It is agreed ......that this proceeding be regarded as a review and the petition of the claimant be so amended as to review the final receipt." On January 3, 1921, the referee filed a report dismissing the petition to modify and basing his conclusion wholly on the fact "That before a hearing was held to consider the [petition to modify] final receipt was executed between the parties in question." On appeal the board set aside the referee's finding. When the parties met before the board they stipulated "that the board should reconsider the case on the basis that the petition before the board should be considered as a petition to set aside the final receipt, and to modify the agreement."

We have then: 1. an agreement for compensation executed April 24, 1920, approved by the board June 2, 1920; 2. a receipt executed at a time not shown, stating disability has ceased; 3. a petition to modify the agreement declaring for the loss of the use of the eye; 4. an answer denying it; and 5. the stipulation of the parties and the evidence already outlined supporting claimant's averment and accepted as the basis of a finding to that effect by the board. We are bound by the conclusion that claimant was mistaken as to the extent of his injury when he stated that disability had ceased on June 4th.

2. We also agree there is sufficient evidence to justify the finding of the board that claimant's loss of the use of his eye resulted from the accident, and, under the statute, we may not inquire further. As we have already

referred to part of this evidence, we need now mention only the following: Dr. Corson was asked:

"Q. You are not able to say how that [injured condition] occurred or what was the cause of it ?

"A. No sir, but likely from that injury

"Q. There are many causes for the condition that you described?

"A. Ordinary vitrous opacities are quite common but not to that extent—I never saw one as extensive as that not due to an injury.

"Q. Disease might cause it?

"A. Yes, sir.

"Q. Disease might cause it just as likely as an accident?

"A. No sir, not to that extent. An accident would only be responsible for that condition to be as extensive as that.

"Q. To what extent is that?

"A. I mean as large an opacity as that." That testimony must, of course, be considered in connection with the evidence of what followed the accident already stated: Fink v. Sheldon Axle and Spring Co., 270 Pa. 476; Morgan v. P. & R. C. & I. Co., 273 Pa. 255, 258. It is not contended that the reduced vision in the affected eye is not such loss of its use as is contemplated by the statute.

The judgment is affirmed.