## Romack v. Philadelphia & Reading Coal and Iron Company.

*Workmen's compensation—Compensation agreement—Change of status of claimant — Modification of agreement — Act of June 2, 1915, P. L. 736, as amended by Act of June 26, 1919, P. L. 642.*

1. A final receipt given by a claimant in a workman's compensation case is not a bar to further compensation if his status is so changed after the receipt has been given as to make the original injury compensable.

2. The law imputes to the parties entering into a compensation agreement for total disability an intention that it shall run for the full period of 500 weeks if the disability shall so long continue, either party to the agreement, however, having the right to seek relief during that period for changes arising out of a change in the status of the claimant.

*Workmen's compensation—Earning power—Loss of wages—Damages.*

3. The loss of wages and loss of earning power are essentially different things.

4. Earning power, under the Workmen's Compensation Act, does not always depend upon the sum actually received, but on consideration of all the elements that make it up or detract from it as defined by the act.

5. Under the act, the employee is entitled to 60 per cent. of the difference between his earning power as impaired and what he received in wages before the accident.

*Workmen's compensation—Appeals—Opinion of board.*

6. When the compensation board has not heard a case *de novo*, excerpts from its opinion, whether relating to questions of fact or of law, cannot be made the basis of exceptions on appeal to the Court of Common Pleas.

Appeal by the defendant from the order of the Compensation Board affirming the award of referee, District No. 2, modifying Compensation Agreement No. 1,551,593. C. P. Schuylkill Co., March T., 1926, No. 542.

*Roger Dever*, for plaintiff.

*John F. Whalen* and *George Ellis*, for defendant.

BERGER, J., April 19, 1926.—This is an appeal by the defendant from an order of the Compensation Board affirming an award of the referee, made by him after a hearing upon a petition filed by the claimant for the reinstatement of a compensation agreement. The claimant, in the course of his employment by the defendant as a contract miner, on Nov. 26, 1923, cut his left wrist with an axe. His average weekly wage at the time was $78.12. The agreement for

compensation entered into by the parties fixed compensation for total disability at $12 per week, dating from Dec. 7, 1923, and compensation at that rate was paid to April 11, 1924, when the claimant signed a final receipt terminating it. He resumed work the same day for the defendant. The work he first did was as "switch boy," which is light work; next he was put to work at dumping in the counter-chute, and on Sept. 17, 1924, he began work as a day miner, at $5.96 per day. His earnings from April 11, 1924, to Sept. 17, 1924, were at a weekly rate of $32.70; from Sept. 17, 1924, to April 23, 1925, at a weekly rate of $33.96; and thereafter, doing the same character of work as when he was injured, $78.12 per week. The referee reinstated the compensation agreement for the period from April 11, 1924, to April 23, 1925, and fixed the rate of compensation during that period at $12 per week. It is entirely clear that the reinstated compensation is for a partial disability, because during the entire period for which it was awarded the claimant worked for the defendant. The date for the termination of the award for partial disability was fixed irrespective of the effect which the original injury may have had upon the claimant's earning power, and was determined solely by the time marking the resumption of weekly payments of $78.12 to the claimant, that sum being what he received when injured.

Two exceptions have been filed by the defendant in support of its appeal. The first is as follows: "The Compensation Board erred in the following finding, there being no competent evidence to sustain it: 'The claimant suffered a loss in earnings amounting to more than $20 per week; this loss, according to the referee's findings, was due to the injuries sustained. In view of the fact that the claimant was practically unable to use his left hand, and did actually suffer a substantial loss of earnings, we are of the opinion that the loss was due to the injuries. Therefore, the referee did not err in reinstating the agreement to provide for partial disability from April 11, 1924, to April 23, 1925.' " The Compensation Board disposed of the appeal from the award of the referee without a hearing de novo solely upon the findings of fact made by the referee. When the board has so proceeded, excerpts from its opinion, whether relating to questions of fact or of law, cannot be made the basis of exceptions on appeal, and if they are, will not be considered. The first exception is, therefore, dismissed.

The second exception filed by the defendant is as follows: "The findings of fact, conclusions of law and order of the referee are affirmed and the appeal is dismissed." The defendant contends in his brief (there was no oral argument) that the evidence is insufficient to establish that the claimant has lost the total use of his left hand. This contention is entirely without merit for two reasons: First, because there is no finding that the claimant has lost the entire use of his left hand; and, second, compensation was not awarded for the loss of a hand, or for disability resulting from permanent injury, as is provided by section 306(c), but for partial disability, as provided by section 306(b) of the Workmen's Compensation Act of June 2, 1915, P. L. 736, as amended by the Act of June 26, 1919, P. L. 642. The other contention of the defendant is "that the testimony does not bear out the claim that he (the claimant) was handicapped by reason of the weakness of his left hand, and that that had to do with the shortage in his earnings in the years 1924 and 1925." The fifth finding of fact made by the referee is as follows: "The claimant has unquestionably quite some impairment of function of his left hand due to the injury of Nov. 26, 1923." This finding is well supported by the evidence, and is clearly sufficient, in our opinion, to support a proper award to the claimant for the resultant loss of earning power. The referee

erred, however, in the method which he employed to determine the amount of the award and in failing to make a specific finding respecting the loss of earning power.

The claimant's petition is for the reinstatement of his compensation agreement, pursuant to section 413 of the Act of 1919, amending the Compensation Act. This petition is very vague, and the answer thereto, if in an action at law or in equity, would have to be regarded merely as a demurrer, raising the question of law that the execution of the final receipt by the claimant barred his right to compensation, notwithstanding disability recurred from the original injury subsequent to the execution and delivery of the receipt. If we had the right to treat the defendant's answer as a demurrer, which we have not, the question of law which he intended to raise would have to be decided against him. A final receipt given by a claimant is not a bar to further compensation, if his status so changes after the receipt has been given as to make the original injury compensable: Parlovich v. Philadelphia & Reading Coal and Iron Co., 76 Pa. Superior Ct. 86; Sarnis v. Philadelphia & Reading Coal and Iron Co., 80 Pa. Superior Ct. 228. The law imputes to the parties entering into a compensation agreement for total disability an intention that it shall run for the full period of 500 weeks, if the disability so long continues, either party to the agreement, however, having the right to seek relief during that period for changes arising out of a change in the status of the claimant: Stinger v. Rinold Brothers et al., 80 Pa. Superior Ct. 420; Manley v. Lycoming Motors Corp., etc., 83 Pa. Superior Ct. 173; Gairt v. Curry Coal Mining Co. et al., 272 Pa. 494.

Strictly speaking, the petition filed ought to have prayed both for a reinstatement and a modification of the compensation agreement. The case having been proceeded in as though this had been the petitioner's prayer, it is proper to dispose of it on the theory upon which it has been presented, especially since established rules and principles of common law practice are inapplicable to compensation proceedings: Manley v. Lycoming Motors Corp., etc., 83 Pa. Superior Ct. 173.

The measure of compensation, section 306(b) of the Compensation Act, as amended by the Act of 1919, is "sixty per centum of the difference between the wages of the injured employee, as defined in section 309, and the earning power of the employee thereafter; but such compensation shall not be more than $12 per week." The fundamental error here is the action of the referee, affirmed by the board, in treating 60 per cent. of the loss of wages between April 11, 1924, and April 23, 1925, amounting to more than $12 per week during that period, as the true measure of the loss of earning power. It is well established in common law practice that the loss of wages and the loss of earning power are essentially different things: McCaffrey v. Schwartz, 285 Pa. 561. The method of determining the amount of financial loss in compensation cases, resulting from a loss of earning power, is clearly stated by Kephart, J., in Bausch v. Fidler, 277 Pa. 573, 579, as follows: "Earning power, under the statute, does not always depend upon the sum actually received, but on a consideration of all the elements that make it up or detract from it, as defined or considered by the Compensation Act; it may be ascertained by considering the body in its normal condition, impaired only by the wrist injury, or it may be represented by the difference between the earning power of a person with one leg and one arm off (total disability) and his earning power with a fractured wrist, coupled with a leg and an arm off. Viewed in either aspect, the result is the same. Under the act, the employee is entitled to 50 per cent. [since increased to 60 per cent.] of the difference

between his earning power thus impaired and what he received in wages before the accident. For illustration, take, as the base earning power before injury, $30 per week. With a wrist a little stiff the earning power would be $28; the reduction is slight, and the difference of $2 would be the base upon which the 60 per cent. would operate, or $1.20 a week. This is the first illustration. As to the second, earning power $30 a week before injury. Earning power with the loss of an arm and a leg, $15 a week. Further loss from a fractured wrist would reduce the earning power to $13. The differences in either event would be $2 per week, and 60 per cent. of this would be the same as the above."

The second exception filed by the appellant must, therefore, be sustained, in so far as it challenges the amount of the award made by the referee. The referee failed to make a distinct finding that partial disability resulting from the original injury recurred after the compensation receipt had been given, and also erred in the method which he adopted to ascertain the loss of earning power. The record is, therefore, remanded to the Compensation Board so that they may proceed to a hearing and determination of this case in the manner provided by law.

And now, April 19, 1926, the record is remanded to the Compensation Board for further hearing and determination.

From M. M. Burke, Shenandoah, Pa.