### Johnson, Appellant, v. Jeddo Highland Coal Company.

Argued March 4, 1930.

Before TREXLER, P. J., KELLER, LINN, GAW-THROP BALDRIGE and GRAFF, JJ.

*Roger J. Dever,* for appellant, cited: Bausch v. Fidler, 277 Pa. Superior Ct. 573; Piper v. Adams Express Co., 270 Pa. Superior Ct. 54.

*John H. Bigelow,* for appellee, cited: Gairt v. Curry Coal Mining Company, 272 Pa. Superior Ct. 494; Horn v. Lehigh Valley Railroad Company, 274 Pa. Superior Ct. 42

OPINION BY KELLER, J., April 18, 1930:

The claimant, a hoisting engineer employed by defendant, while in the course of his employment on

July 28, 1924, was injured so as to require the amputation of nearly half his right foot. He was totally disabled from working until March 12, 1925, during which period he received compensation for total disability, pursuant to a compensation agreement between the parties entered into on September 6, 1924. He returned to work at his former occupation on March 12, 1925, and received the same wages he had before the accident, $5.55 a day. On March 31, 1925, he signed a final receipt under the compensation agreement. On August 26, 1926, he filed a petition to review the said agreement on the ground that he was entitled to compensation for the loss of a foot (under schedule 306-c). The referee decided that his disability was equivalent to the loss of a foot; but on appeal the Workmen's Compensation Board reversed. He continued to be employed as an engineer at $5.55 a day until March 10, 1928, when the engine was shut down, and on April 18, 1928, he was given employment as a laborer at $4.62 a day. On July 14, 1928, he presented his petition to the Workmen's Compensation Board asking that the final receipt aforesaid be set aside and that he be awarded further compensation, on the ground that the injury to his foot, as before described, was a permanent one causing partial disability. The referee found "that a man with a stump of a foot has a permanent partial disability that materially affects his earning power in the open labor market," and "that the claimant has a permanent disability as a result of the injury sustained which reduces his earning power," and fixed this loss at $7.90 a week, the difference between claimant's wages as an engineer and as a laborer, and awarded him compensation at 60% of this amount. On appeal to the board the award was sustained. On appeal to the common pleas the court held the application was within the amendment of April 13, 1927, P. L. 186, and had to be made within one year after the date of the last payment of com-

pensation and was therefore barred as too late; and reversed the board.

Section 413 of the Act of June 26, 1919, P. L. 661, which was amended by the Act of 1927, supra, refers to two distinct classes of cases for the review, modification, etc., of compensation agreements, viz: (1) where the agreement was procured by fraud, coercion or other improper conduct of a party, or was founded on a mistake of law or of fact; (2) upon proof that the disability of an injured employe has increased, decreased, recurred or has temporarily or finally ceased, or that the status of any dependent has changed. The second class relates to changes that have occurred in the employe's physical condition since the compensation agreement was entered into or terminated; the first class does not. We are of opinion that the amendment to this section enacted in 1927, supra, relates only to the second class and has no effect on applications based on fraud, coercion, mistake, etc., embraced within the first class. We are led to this view not only because of its wording and its incorporation into the paragraph dealing with the second class of cases aforesaid, but also by the fact that Sec. 434 which deals with the setting aside of a final receipt for exactly the same causes embraced within the first class, or paragraph, relating to review or modification of agreements, is not amended or affected by the Act of 1927.

While the *form* used in this case related to the review of a compensation agreement under section 413, the relief asked for was the setting aside of the final receipt, which is provided for by section 434. We think it makes no real difference under which section the application is treated provided the giving of the final receipt terminating the compensation agreement was founded upon a mistake of law or of fact. And it is not essential that the petition should contain more than a prayer for the review, or modification, of the agreement or the setting aside of the final receipt; it

is sufficient if the proper ground for action by the board be *proved*. Technical rules of common law pleading do not apply to these proceedings: Gairt v. Curry Coal Mining Co., 272 Pa. 494. It was contemplated that the injured employe might act without the employment of an attorney.

The primary question in this appeal is whether the facts in the case show that the final receipt terminating the compensation agreement was founded on a mistake of law or of fact. If it was, the action of the court below was error.

Had the claimant's entire foot been amputated and he had signed a final receipt on March 31, 1925, after going back to his work as an engineer, there is no doubt it would have been such a mistake of law and fact as would have justified the setting aside of the receipt, (Sarnis v. P. & R. C. & I. Co., 80 Pa. Superior Ct. 228), if applied for within 500 weeks (Ancello v. Tanning Co., 88 Pa. Superior Ct. 353, 357). Is there any reason why a similar ruling should not be made, (if application is made within 300 weeks, Wyinskie v. P. & R. C. & I. Co., 95 Pa. Superior Ct. 170), when the injury, not by reason of subsequent developments, but as the immediate result of the amputation following the injury, left the claimant with a permanent, partial disability? Both parties apparently proceeded on the theory that because, when he returned to work after his total disability ended on March 12, 1925, he received the same wages that he had received before the accident, there could be no award for partial disability, which was a mistake—whether of law or fact is immaterial—for that was to be decided on the basis of difference in earning power, not by mere reference to the wages received before and after the accident: Bausch v. Fidler, 277 Pa. 573; Piper v. Adams Express Co., 270 Pa. 54, 62. The condition which the referee and the board found to amount to a permanent partial disability existed when the final

receipt was signed; it is not the result of any later development. If, as the referee and the board have determined, it constitutes a permanent partial disability, it did so on March 12, 1925. That it was not then so recognized by the parties was due to a mutual mistake, based on the fact that the wages he was receiving after his return to work were the same as he got before he was hurt. It was such a mistake as comes within the provisions of sections 413 and 434 of the Act of 1919. And the petition was filed within the limitation period applicable to partial disability, 300 weeks: Wyinskie v. P. & R. C. & I. Co., supra.

In making the award for partial disability the referee apparently proceeded on the theory that the loss of earning power was measured by the difference between the claimant's wages as engineer and as laborer. That is not the rule, any more than the principle under which the parties proceeded when the final receipt was signed was the correct one. The defendant company treated the claimant with great consideration. He was given employment as an engineer, at his former rate of wages, as long as work of that kind could be found for him. He lost his job as engineer, not because he was unable to work any longer in that position, but because the engine shut down. It would have been the same whether he had been hurt or not. When work as an engineer was no longer available to him, the defendant found employment for him as a laborer. There is no evidence that he received less wages than any other laborer with both legs sound. The defendant company cannot be held to guarantee the claimant labor as an engineer; and the fact that on the shutting down of the engine he was given employment as a laborer, is no evidence that his loss of earning power was measured by the difference between his wages as an engineer and as a laborer. The result might have been the same had he never been hurt. There should be some evidence in the case,

difficult as it may be to. obtain, of the loss of earning power suffered by the claimant because of the amputation of half of his foot, on which to base an award. The measure adopted by the referee is not the just and reasonable basis of determining the loss due to his partial disability. Had he received less wages as an engineer after his return to work, or had he received less wages as a laborer than other laborers were paid, the case would be different; but in the circumstances here present the award cannot stand, and the case must go back for further evidence and consideration by the board.

The judgment of the court below is reversed and the record is directed to be remitted to the Workmen's Compensation Board for further proceedings in accordance with this opinion.