Marmon *v.* Union Collieries Company, Appellant.

Argued April 10, 1939.

Before KELLER, P. J., CUNNINGHAM, BALD-
RIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Edward J. I. Gannon,* of *Hazlett, Gannon & Walter,* for appellant.

*Fred J. Jordan,* with him *Murray J. Jordan* and *Arthur L. McLaughlin,* for appellee.

OPINION BY PARKER, J., June 26, 1939:

Joe Marmon met with an accident on October 21, 1933, while in the course of his employment with the Union Collieries Company and an open agreement was entered into for the payment of compensation for total disability. On October 11, 1935, the claimant resumed work for the employer but at a different type of work from that which he had formerly performed. The coal company on June 18, 1936, presented to the Workmen's Compensation Board a petition for the termination of the agreement alleging that all disability had ended. The referee, affirmed by the board, found that claimant was still partially disabled as a result of the accident, which disability was "reflected in a loss in earning power to the extent of fifty per cent beginning with October 11, 1935, and which disability still continues." An award was made in accord with that finding and on appeal to a court of common pleas judgment was entered in favor of the claimant for the amount of the award.

The only questions raised on this appeal are whether there is any evidence to support the award for compensation for partial disability and if there is whether it

will support the amount awarded. A careful examination of the record convinces us that there is ample evidence to sustain the finding that for the period following claimant's return to work his earning power was partially reduced and that while it was difficult to determine the amount of that reduction there is some evidence that will support the amount of the award.

The defendant, in support of the petition to terminate, relied almost exclusively upon the undisputed fact that claimant, for the period between October 11, 1935, when he returned to work, and the time of the hearing, received from defendant a weekly wage slightly higher than he received before the accident. We have consistently adhered to the principle laid down by the Supreme Court in *Bausch v. Fidler*, 277 Pa. 573, 579, 121 A. 507, to the effect that the compensation a claimant is entitled to receive on account of partial disability is to be measured by loss of earning power and that "earning power, under the statute, does not always depend upon the sum actually received, but on a consideration of all the elements that make it up or detract from it as defined or considered by the compensation act." The actual wages received are some evidence by which to measure the loss but this is not the exclusive guide. As Judge CUNNINGHAM pointed out in a concurring opinion in *Plum v. Hotel Washington*, 125 Pa. Superior Ct. 280, 285, 286, 189 A. 792, it is necessary, in considering the weight to be given to the actual wages received, to "determine, under the facts in each case, whether the claimant is actually earning the wages he is receiving." There are also other matters to be considered, such as the physical condition of the claimant as affected by the accident, his physical and mental limitations which may affect his ability to perform work and adapt himself to a changed employment, the effect of any impairment of body or mind on his ability to compete for employment in the labor market, and the type of labor he is able to perform as compared with what he could formerly do.

It is also necessary to take into consideration changes in wage scales and the condition of the labor market.

The claimant testified that he had been able, prior to the accident to perform hard physical labor; that he had enjoyed good health and had been employed in the strenuous labor of shoveling coal for twenty-six years. A reasonable inference from his testimony is that he is not skilled in any trade or calling and is confined to common labor to gain a livelihood. He was totally incapacitated by the accident for two years and then, although he endeavored to do so, he could not shovel coal or do other hard labor, since any bending caused him severe pain. His employer then gave him an opportunity to repair tracks, which he thought was a somewhat lighter task, and he was unable to do that. Finally he was given the job of picking bony and he continued to regularly perform that task for at least a year, although with considerable discomfort. There was evidence to the effect that between the date of the accident and the return of the claimant to work the wage scale for those engaged in the mining industry was substantially increased. There was also evidence that owing to his physical weakness claimant would have much difficulty in securing employment in any line of work for which he was experienced or that he was capable of performing.

The claimant's testimony, as to his physical condition, was corroborated by the expert testimony of Dr. Wallace, a well known expert in orthopedic surgery. That witness, after describing in considerable detail the injuries to the claimant's spine, stated that if he was examining the claimant for employment, as is the custom with coal companies, he would turn him down.

Under such facts, which we must assume the referee and board accepted as verity, we certainly cannot convict the referee or board of error in finding some loss of earning power and a consequent partial disability: *Cavanaugh v. Luckenbach SS. Co.*, 125 Pa. Superior

Ct. 275, 189 A. 789; *Plum v. Hotel Washington,* supra; *Johnson v. Jeddo Highland C. Co.,* 99 Pa. Superior Ct. 94, 98; *Telario v. Jeff. & Ind. Coal Co.,* 105 Pa. Superior Ct. 305, 308, 161 A. 460; *Bonomo v. St. Wk's Ins. Fund,* 111 Pa. Superior Ct. 402, 170 A. 428; *Henry v. Pgh. Rys. Co.,* 131 Pa. Superior Ct. 252, 200 A. 294; *Bispels v. C. R. Shoemaker, Inc.,* 133 Pa. Superior Ct. 117, 2 A. (2d) 35.

It was apparent from the testimony that the claimant, except by the grace of his employer, would have had great difficulty in finding any employment that he was capable of performing. The expert testified that it was impossible for the claimant to continue in work where it was necessary for him to do much bending of his back and even in the employment in which he has recently been engaged it is most apparent that he could not be efficient and that the wages which he received were paid by his employer rather in an endeavor to rehabilitate him than because he was able to earn the amount of wages paid to him. The line of work that he was then able to perform was much less remunerative than that in which he had been formerly engaged and the increased wages recently paid to him were partly due to a substantial increase in the amount paid to those engaged in this industry. Considering all these facts and particularly the fact that it would be very difficult, if not impossible, for this claimant to obtain employment in the open market we can come to but one conclusion and that is that his earning power was substantially reduced.

This brings us to the final contention of the appellant that the evidence will not support the finding that the earning power of Marmon was reduced 50%. We recognize that it is difficult for a fact finding body to measure with precision loss of earning power and it is equally hard for an appellate court to determine whether the evidence produced will sustain the conclusion reached by the referee or board. If there is any

evidence that will support such finding it must be sustained. We have no power to substitute our judgment for that of the board on pure questions of fact. The difficulties encountered here are in part due to the defendant relying almost entirely on the proofs that claimant received, after the accident, a slightly higher wage than he had formerly received and their failure to produce any evidence rebutting the evidence of claimant tending to show that claimant was not earning the wages received and that his earning power was materially reduced.

It being borne in mind that it is not for us to determine the degree of disability suffered by this man, we feel that the conclusion reached by the board must be sustained. Dr. Wallace made a very thorough examination of the claimant, including the use of X-rays and he explained in detail the effect of the accident upon his spine. Undoubtedly the board was impressed by his conclusion for he was very positive that Marmon's earning power was impaired by at least 50%. Such evidence as the claimant presented tended to support that opinion, while the defendant produced no testimony calculated to show how well the claimant performed his task of picking bony. If this man performed services as a picker comparable to other able-bodied employees engaged in the same work, the employer certainly was in a position to furnish some evidence tending to establish such capacity for labor. The testimony of the claimant to the effect that he received less wages than his co-employees engaged in the same work furnished the basis for an inference that he was not able to perform the usual labor of a picker. Our conclusion is, therefore, that while the question is a close one, we cannot say, as a matter of law, that there was no evidence supporting the board's conclusion.

Judgment affirmed.