## Digasbarro et al. v. H. C. Frick Coke Co.

Before Lencher, P. J., Gunther and O'Connor, JJ.

*Samuel Krimsly*, for claimants.

*Ira R. Hill* and *Reed, Smith, Shaw & McClay*, for defendants.

GUNTHER, J., December 30, 1946.—The case of Giovanni Digasbarro, no. A 515 of 1944, is before the court

upon an appeal by claimant from the order of the board and the referee granting the petition of defendant, H. C. Frick Coke Company, for modification of compensation. The referee's order is based upon the differential in wages received by claimant at the time of the hearing and the wages earned at the time of the accident, January 30, 1930. It is claimant's contention that employment conditions existing at the two dates are not comparable, and that the referee's order does not reflect the true loss in earning power sustained by claimant.

Claimant was injured on January 30, 1943. An agreement for compensation was entered into at the rate of $18 per week for total disability. These payments were received up to November 16, 1943.

At the time of claimant's injury he was working as a coal loader seven hours per day, 35 hours per week. At the time of the hearing claimant had light work, sweeping floors. Due to wage negotiations, claimant was working an additional one and three quarters hours per day, or 14½ hours per week. However, at the time of the hearing, had claimant been able to do his work as a coal loader, he would have been earning approximately $70 per week due to wage increases. The referee made an order modifying the compensation to $5.32 per week. The board affirmed the referee, basing its decision on section 306(b) of the Pennsylvania Workmen's Compensation Act of June 21, 1939, P. L. 520.

Domenick Arista, claimant in the case at no. A 512 of 1944, was injured on March 28, 1942. His wages as a coal loader at the time of the injury were $45.61 per week. He returned to work on July 24, 1942, and for a short time was employed doing light work as a slate picker, and later due to the fact that slate picking became too difficult, he also was given a job sweeping floors. At the time of the hearing, Domenick Arista was working eight and three quarters hours per day,

six days per week or 14½ hours at premium pay. As the result of these conditions, claimant at the time of the hearing was earning wages averaging $46.05 per week. Had claimant been able to do his regular work, his wages would have been approximately $70 per week. After hearing, the referee suspended the order, basing his decision on the fact that claimant was receiving wages of $46.05 per week. His claim was appealed and affirmed by the board. Claimant also filed his appeal to the county court.

There are several questions for us to decide: First, does section 306(*b*) require the compensation authorities to disregard claimant's physical condition, changes in working conditions, general wage increase, and increase in working hours, thereby limiting claimant's award entirely to the wages received? The second question before us is if section 306(*b*) does limit claimant's recovery entirely to wages, did the Legislature of the State of Pennsylvania have the right to enact such a provision which lays down an absolute rule that the term, "earning power", shall in no case be less than the weekly amount which the employe received after this accident?

In both of these cases we have claimants who at the time of the accident were employed as coal loaders, but following the accident, due to physical disability, were given light employment sweeping floors. It has been established by competent evidence that both claimants have definite disability, and also that due to increase in wages and circumstances, they could have been earning approximately $70 per week as coal loaders if they had not suffered disability. Under the circumstances as set forth above the compensation authorities were of the opinion that the award of $5.32 in the first case and the suspension in the second case were justified.

Both of these cases are covered by the Amendment of June 21, 1939, P. L. 520, of the Workmen's Compensation Act. Section 306(*b*) of said amendment states

the manner of determining the amount of compensation payable to a claimant suffering partial disability, namely:

"For disability partial in character (except the particular cases mentioned in clause (c)) sixty-six and two-thirds per centum of the difference between the wages of the injured employee, as defined in section three hundred and nine, and the earning power of the employee thereafter; but such compensation shall not be more than fifteen dollars per week. This compensation shall be paid during the period of such partial disability, not, however, beyond three hundred weeks after the seventh day of disability. Should total disability be followed by partial disability, the period of three hundred weeks mentioned in this clause shall be reduced by the number of weeks during which compensation was paid for total disability. The term *'earning power', as used in this section, shall in no case be less than the weekly amount which the employee receives after the accident.*" (Italics supplied.)

The purpose of the Workmen's Compensation Act is not only to relieve the employe to some extent from the present economic consequences of his injury, but should also provide for economic relief in the future where the injury sustained remains and claimant is prevented from employment by reason of the injury. The earning power should be determined by the extent of the physical injury and disability, character of the work, and efficiency. It cannot be determined solely by ascertaining the amount of wages an employe received after sustaining the injury. Our legislature derives its power to enact workmen's compensation acts from article III, sec. 21, of the Constitution. This constitutional authorization lays down three fundamental requirements: First, the compensation must be reasonable; second, the injuries must arise in the course of employment; and third, the acts must provide for benefits to be paid by employers to their em-

ployes. We, however, do not believe that the legislature had in mind that the earning power should be solely determined by the wages an employe was able to earn following an accident. Especially, the earning power of a claimant assigned to special duty such as sweeping floors is certainly not comparable to the earning power of a claimant who is required to go in the open labor market as a coal loader. If this employment of sweeping floors should at any time be discontinued, or the company go out of existence, what opportunity would the claimant have in obtaining such work in the open market? In the cases before us, claimants are able to earn more or as much money now sweeping floors as they did loading coal because the employer made these circumstances and conditions available in the nature of a gratuity. No provision is made for disability in case the company should go out of existence, or claimants should lose their jobs as floor sweepers. If claimants were compelled to go out in the open market and seek employment as coal loaders, which they could not obtain, the result definitely would be a financial loss. We agree that the best method of determining earning power is to find out what a person's services are worth in the open market, but we also must keep in mind the difference of value of services in the open market of a perfectly sound coal loader, and one with disability. We are not convinced that claimants with their present disability can readily find employment which might be considered in line with their earning power before the accident. The compensation act should be liberally construed to carry out the humane purposes for which it was intended.

The Act of June 21, 1939, P. L. 520, 77 PS §512, amending section 306(b) of The Workmen's Compensation Act of June 2, 1915, P. L. 736, as reënacted and amended by The Workmen's Compensation Act of June 4, 1937, P. L. 1552, is to be considered as an amendment altering the rules of evidence before the referee or the Workmen's Compensation Board.

In order to determine the force and effect of the Act of 1939 insofar as it relates to section 306(*b*), it is necessary to compare the provisions of said section as they existed prior to the amending act with the provisions of the same section after amendment.

Prior to amendment, section 306(*b*) provides in part as follows:

". . . In cases of partial disability, the actual earnings of an employee, after the date of injury, may, along with other evidence, be received as evidence of the extent of his earning power, but if such employee has no such earnings, the referee may, in the interest of justice, fix such earning power as shall be reasonable, having due regard to the character of his previous employment, and the nature of his injury and his partial disability . . ."

By virtue of the Act of 1939, section 306(*b*) was amended to read as follows:

"For disability partial in character (except the particular cases mentioned in clause (c)) sixty-six and two-thirds per centum of the difference between the wages of the injured employee, as defined in section three hundred and nine, and the earning power of the employee thereafter; but such compensation shall not be more than fifteen dollars per week. This compensation shall be paid during the period of such partial disability, not, however, beyond three hundred weeks after the seventh day of disability. Should total disability be followed by partial disability, the period of three hundred weeks mentioned in this clause shall be reduced by the number of weeks during which compensation was paid for total disability. The term 'earning power', as used in this section, shall in no case be less than the weekly amount which the employee receives after the accident . . ."

We are here concerned with the question as to the manner, if any, in which the legal meaning of "earning

power" under the Act of 1937 may have been altered by the amending Act of 1939.

In order to determine "earning power" under the Act of 1937, section 306($b$) provided that:

". . . in cases of partial disability, the actual earnings of an employee, after the date of injury, may, along with other evidence, be received as evidence of the extent of his earning power, but if such employee has no such earnings, the referee may, in the interest of justice, fix such earning power as shall be reasonable, having due regard to the character of his previous employment and the nature of his injury and his partial disability."

This quoted portion was deleted by the amending Act of 1939 and in place thereof it was provided as follows:

"The term 'earning power', as used in this section, shall in no case be less than the weekly amount which the employee receives after the accident."

The established principles have been clearly formulated in the cases containing the following quotations:

". . . Earning power is not determined solely by ascertaining the amount of wages an employee received after he sustained an injury. . . . In many instances, wages actually received are unsatisfactory evidence of earning power. The injured person may be especially favored, . . . The proper test to be applied in determining whether the power to earn has been diminished is a claimant's ability to earn wages in any kind of employment: Henry v. Pittsburgh Rys. Co., 131 Pa. Superior Ct. 252, 254, 200 A. 294.

"Earning power is to be determined not only by taking into account the actual amount of wages an employee receives following an injury, but also by considering the other elements affecting his earning power. Such elements include (1) the character and extent of his physical injury or disability; (2) his productivity or efficiency in the same employment as

compared to what it was immediately prior to the injury; and (3) his ability to earn wages in any kind of employment for which he is fitted": Bispels v. Shoemaker, Inc., 133 Pa. Superior Ct. 117, 2 A.(2d) 36.

"The earnings of a claimant after an accident, as compared with his former earnings, are but evidence of a change of earning power but are not conclusive of the matter: Cavanaugh v. Luckenbach SS. Co., 125 Pa. Superior Ct. 275, 189 A. 789; Plum v. Hotel Washington et al., 125 Pa. Superior Ct. 280, 189 A. 792": Weinstock v. United Cigar Stores Co., 137 Pa. Superior Ct. 128.

The reasoning in support of the established principle that the amount of "wages" received after an injury is not conclusive as to the measure of "earning power" of an injured employe is clearly set forth in Rennard v. Rouseville Cooperage Company et al., 141 Pa. Superior Ct. 286, 291, as follows:

"The principle is, of course, well established that the amount of wages received after an accident is evidence, but not conclusive, in determining the earning power of an employee at such time. For such wages may often indicate that the employee is the beneficiary of a mere gratuity (Weinstock v. United Cigar Stores Co., 137 Pa. Superior Ct. 128, 8 A. 2d 799), that the character of his work does not truly reflect his earning power (Henry v. Pittsburgh Railways Co., 131 Pa. Superior Ct. 252, 200 A. 294), that a general change in wage scales has taken place for the type of work or in the industry (Marmon v. Union Collieries Co., 135 Pa. Superior Ct. 582, 7 A. 2d 156), or that they are intended as an inducement to refrain from pursuing a claim (Bispels v. C. R. Shoemaker, Inc., et al., 133 Pa. Superior Ct. 117, 2 A. 2d 35) . . ."

We agree that in the absence of other competent evidence, evidence as to the amount received after an accident is determinative of claimant's "earning power".

But, in nowise can this amendment properly be construed so as to eliminate the competency of evidence other than that relating to the "amount received" after an accident for the purpose of determining an injured employe's "earning power". This amendment in effect states that the "amount received" after an accident is prima facie evidence of claimant's "earning power" and in the absence of other competent evidence, evidence as to the "amount received" is controlling as to "earning power". Thus, if any evidence is present before the referee or the board as to the "amount received" after an accident and no other evidence is offered, the fact-finding body shall determine "earning power" on the basis of such evidence alone. However, the amendment does not mean to say that no evidence, other than that relating to "amount received", is competent, material or relevant.

Thus, under the amendment of the Act of 1939, evidence as to "amount received", raises the presumption that the "earning power" after the accident is identical therewith. While such presumption is valid, there is no doubt that its validity remains only so long as no additional competent evidence is offered to rebut it. Any other view as to the effect of this amendment would be tantamount to saying that evidence as to "amount received" raises the conclusive presumption that "earning power" of an injured employe after an accident, is identical therewith.

This amendment was not intended to establish a conclusive presumption of law that "amount received" is identical with "earning power" and that such was not the intended purpose of the *amount* is pointed out in the case of Scipani v. Pressed Steel Car Company et al., 150 Pa. Superior Ct. 410, 414, wherein the court states:

"The amendment does not abolish the distinction, established by our decisions, between earning power and wages, for the amount received is not made the

exclusive measure of the ability to earn; it still may be shown that earning power, as affecting the right to compensation, is *more* than the wages received."

In the light of this construction, the amendment of 1939 cannot be said to exclude other competent and material evidence bearing upon the determination of the ultimate issue of "earning power".

This amendment is drawn in most uncertain and ambiguous language, and it is certain to cause very considerable litigation. It is to be noted that the term "wages" nowhere appears in this amendment, and therefore section 309, which defines the term "wages", is not applicable, unless by implication or judicial interpolation. Further, if it is literally construed, the phrase, "which the employee receives after the accident" may include that which he receives as gratuity, or income, etc.

In reading the acts and the amendments there is some question of the constitutionality of the act, and if the conclusion of the compensation authorities should be that the earning power is solely determined by ascertaining the amount of wages the employe received after sustaining an injury, the legislature went beyond its powers by enacting a provision which lays down an absolute rule that the earning power shall in no case be less than the weekly amount which the employe received after the accident. It still may be shown that earning power as related to the right to compensation, is more than the wages received. Any other conclusion would give the amendment a one-sided construction, that is, it would protect the employers and would act as a penalty upon claimant who returned to work and sincerely and honestly endeavored to improve his condition. The referee in this case should have taken into consideration the services rendered, and the earnings received prior to the accident, as against that furnished by claimant following his return to work.

Can we assume that the legislature intended to deprive a partly disabled claimant from compensation merely because his total wages received after his return to work were equal or nearly equal to the wages received prior to the accident, without taking into consideration the nature of the services, the hours engaged in rendering such services, the amount received per week and other relative factors?

In Rich Hill Coal Company et al. v. Bashore, 344 Pa. 449, 474, the Supreme Court of Pennsylvania states:

"When the legislature attempts to create presumptions which are not necessary as procedural expedients and are not rules of proof production based upon the comparative availability to the respective parties, of material evidence, and are diametrically opposed to the generally known results of wide experience, such presumptions are entirely arbitrary and are therefore invalid . . ."

A reading of the constitutional amendment authorizing the enactment of a Workmen's Compensation Law together with a clear understanding of the basic purpose of the Workmen's Compensation Act of this Commonwealth clearly established one proposition beyond doubt, viz, reasonable compensation is to be made for injuries.

Neither the constitutional amendment nor the Workmen's Compensation Act authorized by it, was intended to provide merely for wage insurance. The intention of both was to compensate an injured employe for accidental injury as a fair exchange for relinquishing every other right for action against the employer.

### Order of the court

And now, to wit, December 30, 1946, it is ordered that this record be returned to the Workmen's Compensation Board for further hearing to determine a

more reasonable compensation and thereupon return the record to this court for final disposition of this appeal.