In the Matter of the Claim of AUGUSTUS JORDAN against DECORATIVE COMPANY et al., Appellants.

STATE INDUSTRIAL COMMISSION, Respondent.

Workmen's Compensation Law.— hernia an accidental injury — award for failure to find work — when refusal to accept work bar to award.

1. A hernia resulting from strain in lifting a heavy box is an accidental injury within the meaning of subdivision 7 of section 3 of the Workmen's Compensation Law (Cons. Laws, ch. 67). (*Matter of Veneroni* v. *Bausch & Lomb Optical Co.*, 229 N. Y. 628, followed; *Matter of Alpert* v. *Powers*, 223 N. Y. 97, distinguished.)

2. Compensation, if due at all, is to be measured by a prescribed percentage of "the difference between his average weekly wages and his wage earning capacity thereafter in the same employment or otherwise." (Workmen's Com. Law, § 15, subds. 3, 4.) Failure to find work because the labor is unmarketable owing to the condition of the laborer will justify the inference of diminished earning power and an award based thereon, but where it appears from the record that claim-

ant was offered work that he could do, paying the same wages that he received before the accident, but that he refused it, in the absence of a denial or explanation, there is no basis for an award for disability during the period that such work might have been obtained.

*Matter of Jordan* v. *Decorative Co.*, 194 App. Div. 927, reversed.

(Argued March 3, 1921; decided March 15, 1921.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered November 24, 1920, affirming an award of the state industrial commission made under the Workmen's Compensation Law.

The nature of the action and the facts, so far as material, are stated in the opinion.

*E. C. Sherwood, Clarence S. Zipp* and *Benjamin C. Loder* for appellants. No accidental injury was shown. (*Matter of Alpert* v. *Powers*, 223 N. Y. 97; *Matter of Woodruff* v. *Howes*, 228 N. Y. 276; *Matter of Eldridge* v. *Endicott-Johnson Co.*, 228 N. Y. 21; *Gentelong* v. *Am. Hide & Leather Co.*, 194 App. Div. 9; *Hager* v. *Griffin*, 193 App. Div. 820; *Cavalier* v. *Chevrolet Motor Co.*, 189 App. Div. 412; *Matoris* v. *Estey Piano Co.*, 189 App. Div. 297; *Madden's Case*, 222 Mass. 487; *Paul* v. *Travelers Ins. Co.*, 112 N. Y. 472; *Schaming* v. *Standard Castings Co.*, 169 N. W. Rep. 879; *Tackles* v. *Detwiler*, 167 N. W. Rep. 36; *Jakub* v. *Industrial Comm.*, 123 N. E. Rep. 263.)

*Charles D. Newton, Attorney-General (E. C. Aiken* of counsel), for respondent. The claimant received an accidental injury which arose out and in the course of his employment. (*Fenton* v. *Thorley & Co.*, 5 W. C. C. 1; *Clover, Clayton & Co.* v. *Hughes*, 3 B. W. C. C. 275; *Lancaster* v. *Blackwell Colliery Co.*, 12 B. W. C. C. 400; *Zeppala* v. *Industrial Ins. Comm.*, 82 Wash. 314; *Pocardi* v. *Public Service Comm.*, 84 S. E. Rep. 242; *Robbins* v. *Original Gas Engine Co.*, 157 N. W. Rep. 437; *Bell* v.

*Hays-Ionia Co.*, 158 N. W. Rep. 179; *Hurley* v. *S. B. Construction Co.*, 159 N. W. Rep. 311; *Veneroni* v. *B. & L. Optical Co.*, 229 N. Y. 628.)

CARDOZO, J.    The claimant, while lifting a box of clay weighing 700 pounds or more, strained his left side, and hernia resulted.    There is no doubt that this was an accidental injury within the meaning of the statute (Workmen's Compensation Law, sec. 3, subd. 7; Consol. Laws, chap. 67).    *Matter of Alpert* v. *Powers* (223 N. Y. 97) holds nothing to the contrary.    In that case there was no finding · of any causal relation between the strain and the rupture.    Here, the causal relation is found and proved.    In such conditions, our ruling in *Matter of Veneroni* v. *Bausch & Lomb Optical Company* (229 N. Y. 628) sustains the right to compensation.    The ruling is in accord with the decisions in other jurisdictions (*Fenton* v. *Thorley & Co.*, 1903, A. C. 443, 448; *Clover, Clayton & Co.* v. *Hughes*, 1910, A. C. 242).

The question remains whether the award should be vacated as excessive.    The claimant suffered the rupture on April 19, 1919.    He remained in the service of the same employer till May 8 of the same year, when · he was discharged.    There is evidence that his capacity for heavy work had been impaired, if not destroyed.    Light work he could do as efficiently and readily as before. Following his discharge on May 8, he was idle till June 1, when he went to work for the Race Track Association, receiving very soon the same wages as before the accident. His duty was to rake the lawn and do general work about the grounds.    In that service he remained till August 2 of the same year.    There is evidence, not contradicted, that he could have remained longer, and at the same wages, if he had been willing to serve as watchman.    His duty as watchman would have been to sit at the gate and keep intruders off the track.    From August 2 to October 4 he was idle again.    He got a job on October 4, a few

days before the hearing. He testifies in general terms that in the weeks when he was idle, he looked for work and found none. He offers neither denial nor explanation of his refusal to accept the work which had been tendered. Compensation, if due at all, is to be measured by a prescribed percentage of " the difference between his average weekly wages and his wage earning capacity thereafter in the same employment or otherwise " (Workmen's Compensation Law, sec. 15, subds. 3 and 4). The latter factor in the computation has been treated by the commission as zero during the weeks of unemployment. On that basis there has been award for disability between May 8 and June 1, and between August 2 and October 4, the periods of idleness.

For the first of these periods there is evidence that sustains the finding. The claimant's search for work was fruitless. The inference is permissible that it was his own physical defects which made the quest a vain one. Failure to find work is, indeed, no ground for compensation if the failure has its origin in general business conditions, the slackness of the demand for labor (*Cardiff Corporation* v. *Hall*, 1911, 1 K. B. 1009, 1018; *Durney's Case*, 222 Mass. 461). Failure to find work stands upon a different basis when the labor is unmarketable because of the condition of the laborer (*Cardiff Corp.* v. *Hall, supra,* pp. 1018, 1020; *Clark* v. *Gas Light & Coke Co.*, 7 W. C. C. 119; *Sullivan's Case*, 218 Mass. 141.) There is some basis for a finding that this was the claimant's plight. He was an unskilled or common laborer. He coupled his request for employment with notice that the labor must be light. The applicant imposing such conditions is quickly put aside for more versatile competitors. Business has little patience with the suitor for ease and favor. He is the " odd lot " man (*Cardiff Corp.* v. *Hall, supra,* at p. 1021; *James* v. *Mordey, Carney & Co.*, 1913, 109 L. T. 377), the " nondescript in the labor market " (*Cardiff Corp.* v. *Hall, supra,* at p.

1024).  Work, if he gets it, is likely to be casual and intermittent.  The general conditions of business in the spring of 1919 were within the knowledge of the commission.  Slackness of trade at that time did not embarrass the efficient laborer.  Rebuff, if suffered, might reasonably be ascribed to the narrow opportunities that await the sick and halt.  In such circumstances, disability, followed by search for work and failure, will justify the inference of diminished earning power (*Clark v. Gas Light & Coke Co., supra; Cardiff Corp. v. Hall, supra; Sullivan's Case, supra*).

The second term of idleness (between August and October) brings up another question.  Work was offered and refused.  Earning capacity was then equal, if the claimant was willing to exert it, to capacity before the injury.  We must hold him to the use of the powers which he had (*Cardiff Corp. v. Hall, supra*, p. 1019; *Proctor & Sons v. Robinson*, 1911, 1 K. B. 1004; *Lacione's Case*, 227 Mass. 271; *Barry's Case*, 235 Mass. 408, 410).  Cases such as this where the award is to be measured by the difference between wages and capacity are, of course, not to be confused with those where the act prescribes a fixed and certain limit, irrespective of the tendency of the individual to rise above or fall below it (Workmen's Compensation Law, sec. 15, subds. 1, 2, 3).  That this claimant did refuse without excuse to use the powers which were his, is a conclusion not to be avoided upon the record now before us.  The refusal is not explained.  The offer is not denied.  We find no sufficient denial in the vague testimony of the claimant that he looked for work without success.  The context shows that he was speaking of his efforts following discharge from service, and not of offers made before.  If this might otherwise be doubtful, his silence, on resuming the stand, after hearing the employer's testimony, would make his meaning certain.  " 'All evidence,' said Lord MANSFIELD in *Blatch v. Archer*, 1 Cowper, 63, 65, ' is to be weighed

according to the proof which it was in the power of one side to have produced and in the power of the other side to have contradicted ' " (*Kirby* v. *Tallmadge,* 160 U. S. 379, 383). A finding adverse to the making and rejection of this offer of employment rests on words too vague and slender to be characterized as evidence (*Matter of ·Case,* 214 N. Y. 199). A different situation would be here if the claimant put the work aside in the belief that it was beyond his powers. Nothing in the record suggests that explanation of his conduct. Apparently the work was lighter than the work he had been doing. In the absence of denial or explanation, we find no basis in the record for this branch of the award. The statute was not adopted that sloth might be a source of profit.

The order of the Appellate Division and the award of the industrial commission should be reversed, and a rehearing ordered, with costs to abide the event.

HISCOCK, Ch. J., POUND, McLAUGHLIN, CRANE and ANDREWS, JJ., concur; CHASE, J., dissents.

Order reversed, etc.