Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Claim of ESTELLA SCHAPIRO, Respondent, for Compensation under the Workmen's Compensation Law, *v.* JOHN WANAMAKER, Employer, and GENERAL ACCIDENT, FIRE AND LIFE ASSURANCE CORPORATION, LTD., Insurance Carrier, Appellants.

Third Department, July 7, 1921.

Workmen's Compensation Law — employee of department store injured while pulling out drawer — evidence not justifying award — cancer not due to injury received.

An award was not justified where it appeared that the claimant, a woman thirty-two years of age, who was employed as assistant buyer in a department store, while pulling out a large drawer, felt something snap in her chest and fell fainting, the drawer falling on her chest; that she continued to work in the store for more than seven months thereafter when she was operated on for cancer in the breast but later returned to her work at which she continued till she resigned because of a disagreement with her superior, and there was no evidence that the claimant was not perfectly able at the time of her resignation or at any time up to the close of the period of non-employment, which she voluntarily

terminated by accepting other employment, to perform the services required of her.

Furthermore, the evidence does not establish that the cancerous condition of the claimant was brought about by any injury received by her in the course of her employment.

JOHN M. KELLOGG, P. J., dissents.

APPEAL by the defendants, John Wanamaker and another, from an award of the State Industrial Commission, entered in the office of said Commission on the 20th day of October, 1920.

*Alfred W. Meldon [Joseph Force Crater* of counsel], for the appellants.

*Charles D. Newton, Attorney-General [E. C. Aiken, Deputy Attorney-General,* of counsel], for the respondents.

WOODWARD, J.:

Starting from the standpoint that an "injury" or a "personal injury" means, within the contemplation of the Workmen's Compensation Law, "only accidental injuries arising out of and in the course of employment and such disease or infection as may naturally and unavoidably result therefrom" (§ 3, subd. 7, as amd. by Laws of 1917, chap. 705), where shall we find the evidence to support the present award? The claimant is a woman thirty-two years of age. On the 13th day of November, 1918, she was employed as an assistant buyer by John Wanamaker, receiving a compensation of twenty-nine dollars per week. While pulling out a large drawer, in the work of cleaning up her department, the claimant testifies that she felt something snap in her chest and fell fainting. It appears that in falling the drawer fell upon her chest. The store physician bandaged her chest and the claimant went to her home, where she remained for three days, returning afterwards to the store. During this three days claimant subjected herself to an X-ray examination, with negative result. Her chest remained bandaged for some time, but she continued her work in the store, so far as the record discloses, until the 25th of June, 1919, when, discovering a rash upon her breast, she consulted physicians and was sent to St. Luke's Hospital for an immediate operation for cancer. The operation was performed

on the 3d day of July, 1919, the claimant remaining in the hospital for three weeks, when she went to the country. The operation appears to have been successful for the time being at least, and on the 16th day of September, 1919, the claimant returned to the Wanamaker store, where she worked until the 10th day of April, 1920, when she resigned because of a disagreement with the buyer, and it appears from the evidence that she declined to consider re-employment at the same place. From the sixteenth day of September to the tenth of April following the claimant's employment was less arduous than previously, but she was paid the same wages, and it is undisputed that she might have continued the employment indefinitely upon the same terms, except for the fact that she could not tolerate the conduct of Miss Bader, the buyer, to whom she acted as assistant, though from the record Miss Bader appears to have done nothing more than to fail to evince as much curiosity as to the feelings of the claimant as the latter expected. The Commission has awarded compensation from the date of the resignation of the claimant, April 9, 1920, to October 4, 1920, on which latter date the claimant accepted employment with another concern at a substantial advance over that which she had been receiving at Wanamaker's. The defendants appeal.

There is no evidence in the record that the claimant was not perfectly able to perform the services required of her at Wanamaker's at the time of her resignation, or at any time up to the close of the period of non-employment; her rather petulant declarations that she could not work under the conditions — which involved the mere personal friction between the claimant and Miss Bader — not arising to the dignity of evidence. (*Matter of Jordan* v. *Decorative Co.*, 230 N. Y. 522, 527; *Matter of Case*, 214 id. 199.) In the case of *Matter of Jordan* v. *Decorative Co.* (*supra*) the court say: "Work was offered and refused. Earning capacity was then equal, if the claimant was willing to exert it, to capacity before the injury. We must hold him to the use of the powers which he had. * * * The statute was not adopted that sloth might be a source of profit." The Workmen's Compensation Law does not assume the obligation of adjusting the personal relations of employees; it does not assume to charge to industry

the losses incident to the caprice of those who refuse to perform the services for which they are not incapacitated by injuries growing out of the employment, and it seems to us entirely clear that there is no legal foundation for this award, assuming the cancerous condition to have been due to the accident.

But is there evidence to show that the cancer was the natural and unavoidable result of the accident happening to the claimant on the 13th day of November, 1918? The claimant was out of the store for three days, in the meantime submitting to an X-ray examination showing a negative result, and then she resumed her employment and remained at work until the twenty-fifth of the following June, some seven months later, at which time she underwent an operation said to have shown a cancerous condition of her left breast. The only evidence bearing upon the relation of this disease to the accident is afforded by Dr. Michailovsky, a distant relative of the claimant, who says he was visited professionally by the claimant at the time of the accident; that he sent her for an X-ray examination, and that he did not see her again until the following June, when she consulted him because of a rash upon her breast. He says he does not know the cause of this rash; that while examining her he discovered a condition which induced him to send her to a hospital for immediate operation for a cancer.

This doctor was asked if he connected this condition up with the visit which the claimant made to him in November previous, and he answered in the affirmative. Asked how he made this connection he replied that he had been studying the etiology of cancer for some time and was very much interested in the causation of cancer. He then stated that he had been making this study from 1908 to the present time, and that he had not found out the cause of cancer. Further asked: "Why did you connect up this condition with the visit Miss Schapiro made in November?" he replied: "Because there is a certain amount of evidence that cancer may follow an injury;" but he admitted that it does not necessarily follow an injury. Asked what kind of an injury would it have to be to cause the condition, he answered, "I do not know." Asked if it would have to be a direct trauma

to the affected part, he again answered, " I do not know. Nobody knows."

After some further incidental matters, not bearing upon the point here under consideration, the deputy commissioner took the witness in hand.   The deputy commissioner asked: " Is it not commonly known among physicians that cancer follows a blow? "   The doctor answered: " We think that a chronic injury is more apt to cause cancer than a single injury, but a single injury frequently enough has been followed by cancer to make it possible it can do so in any case."   The deputy commissioner persisted: " It is common knowledge to all men, where a woman has received a blow or hit in the breast, cancer follows? "   To this the physician answered: " We have to take evidence.   It is not sure.   I have not seen cases in the Memorial Hospital [where he had his experience] where cancer followed a definite single injury."   To the deputy commissioner's suggestion that " medicine is so uncertain " the witness replied: " We cannot be absolutely sure."

Surely this falls far short of evidence that the cancerous condition of this claimant, brought to light seven months after her injury, was such a " disease or infection as may naturally and unavoidably result " from the accident which befell the claimant.   The claimant's own private physician says he does not know what kind of an injury would be necessary to produce the condition subsequently found; that he does not know whether a direct trauma would be necessary, and that no one knows.   All that he pretends to know is that " there is a certain amount of evidence that cancer may follow an injury," and that " a single injury frequently enough has been followed by cancer to make it possible it can do so in any case."   The claimant's injury which caused her to faint and fall was described as something snapping in her chest, not a blow to her chest, and while there is some testimony that she was found under the large drawer, that it lay upon her breast when she came to, there is very little to indicate that the drawer itself produced any traumatism of consequence.   The claimant testifies to great pain, and evidently has reference to the injury resulting from her strain in pulling on the drawer at the time she felt the snapping, not to the incidental fact of the drawer being upon her when

she came to; and we are unable to discover any evidence upon which a finding can legitimately be based that the cancer was a result naturally and unavoidably flowing from the injury received. The whole matter is speculative. Medical science, as voiced by the claimant's own witness, frankly says that it has not yet found out the cause of cancer; but the State Industrial Commission finds that the claimant's cancerous condition was produced by an injury, the exact nature of which is not disclosed by the evidence, and which no one pretends to know would be capable of producing the result outside of the Commission itself.

The award should be reversed and the claim dismissed.

All concur, KILEY, J., in result, except JOHN M. KELLOGG, P. J., dissenting.

Award reversed and claim dismissed.