DYER *v.* GENERAL MOTORS CORPORATION.

1. WORKMEN'S COMPENSATION—CONNECTING ROD POLISHER—FINDING OF DEPARTMENT—EVIDENCE.

   Finding of department of labor and industry that connecting rod polisher was disabled by reason of being hit on left side of abdomen while polishing a rod *held*, sustained by evidence.

2. SAME—REFUSAL TO SUBMIT TO OPERATION UPON ABDOMEN.

   Right to compensation was not precluded by injured employee's refusal to submit to an exploratory operation where it is not shown such operation was not one fraught with danger to plaintiff's life or health or that he might not incur extraordinary suffering in consequence thereof and he was not assured that it offered a reasonable prospect of relieving or correcting his incapacity due to injury to abdomen.

3. SAME—PARTIAL DISABILITY—AUTOMATIC DISCHARGE THROUGH FAILURE TO PAY UNION DUES.

   Compensation claimant whose earnings were reduced because of injury from $56.53 per week before injury to about $10 per week thereafter was not precluded from recovering $21 per week compensation where he refused to pay union dues which resulted in his being automatically discharged under union's contract with employer as employer was not prejudiced by the amount of compensation awarded since claimant was entitled to such compensation for partial disability irrespective of termination of employment (2 Comp. Laws 1929, § 8426, as amended by Act No. 245, Pub. Acts 1943).

4. SAME—COMPROMISE—EQUITY.

   The right to workmen's compensation is a matter of law, fixed by statute, and is not to be determined as a matter of compromise or in an effort to obtain an equitable result.

Appeal from Department of Labor and Industry. Submitted April 11, 1947. (Docket No. 67, Calendar No. 43,644.) Decided May 16, 1947.

Joe Dyer presented his claim against General Motors Corporation, Chevrolet-Flint Division, for compensation for injuries sustained while in its employ.   Award to plaintiff.   Defendant appeals. Affirmed.

*Bernstein & Bernstein,* for plaintiff.

*Henry M. Hogan (R. V. Hackett, G. W. Gloster* and *E. H. Reynolds,* of counsel), for defendant.

North, J.   In this compensation case the employer has appealed from an award of compensation made to plaintiff, Joe Dyer.   The factual background of this litigation, as disclosed by the record, is aptly stated in the opinion of the department as follows:

"The plaintiff, Joe Dyer, after a pre-employment physical examination, started working for the Chevrolet-Flint Division of General Motors Corporation on August 7, 1944.   He was assigned to a burring job.   Later he was transferred to work which consisted of polishing connecting rods.   On February 13 [15], 1945 while polishing a rod, a broken knob on the machine used for polishing caused the rod to fly back, striking him in the left side of the abdomen.   He immediately reported the accident to his foreman who sent him to the plant hospital.   He described the accident to the doctor who attended him at the hospital.   He was given a light treatment and returned to work.   [Within an hour or two because of severe pain plaintiff returned to the plant hospital and was given a pass to go home.]

"About two weeks later plaintiff [having resumed work] returned to the hospital complaining of pain in the abdomen and was given a pass to go home. He remained at home in bed for about a week suffering from a rather severe pain in the area where he was struck.   After he returned to work he went to

the hospital nearly every day for treatment. Later, on the advice of the plant doctor, he was assigned to light work. He continued to experience pain in the abdomen and was off work for approximately three weeks. When he returned to work he was placed on the wash rack which apparently was lighter work than he had previously done. He still complained of pain and was finally transferred to a drill press operation which admittedly is light work. Plaintiff's employment was terminated November 8, 1945 by his employer for the reason that he had failed to pay his union dues. The employer's contract with the union provides for a dismissal of employees who do not maintain their membership in the union by payment of dues. Since his discharge plaintiff has only worked seven days during a two-weeks period as a carpenter's helper up to June 10, 1946. He claims that he was not able to continue working because of the abdominal pain.

"Plaintiff had no symptoms prior to the accident. The symptoms developed immediately after the accident and have persisted since. Plaintiff was examined on various occasions by plant doctors and given infra-red treatment during the course of the time he worked after the accident. His work record following the accident shows that he lost considerable time. According to plaintiff's testimony, the pain in the lower left quadrant was so bad that he had to take time off from work. The plant physicians were unable to find a definite cause for plaintiff's complaints. At one time it was thought that he might have a hernia though apparently no diagnosis of a hernia was ever made. He was offered an operation on July 18, 1945. The proposed surgery was in the nature of an exploratory operation. Plaintiff refused to submit to the operation unless he was paid compensation benefits for the period of time he had lost up to July 18, 1945. Defendant refused to pay compensation benefits unless it could

be determined from the operation that the accidental injury was the cause of whatever pathology, if any, was found.''

Appellant's first contention is that there was no competent evidence to sustain the finding that plaintiff's alleged disability is due to an injury sustained on February 15, 1945. This contention is without merit. Aside from other competent testimony pertinent to the above issue, Doctor Benjamin F. Freeman testified as to the results of a detailed examination made by him of plaintiff, which we quote in part:

''However, when the left abdominal wall was examined the patient complained of marked pain and tenderness and there was marked rigidity and spasticity of the muscles, and the patient immediately pulled away from the examiner's hand when an attempt was made to examine this area. I could not detect any tumor masses in the abdominal wall or cavity, but the patient was so extremely tender and painful that a thorough examination was impossible because of this. * * *

''Q. What was your diagnosis, Dr. Freeman?

''A. Injury to the left side of the abdominal wall with some internal disturbance to account for the marked rigidity, spasticity, pain and tenderness the patient has in the left abdominal wall, probably a peritoneal hemorrhage or hemorrhage into the wall of the intestines and abdomen.''

Following the above testimony a lengthy hypothetical question, embodying the facts appearing from the record, was propounded to Doctor Freeman, incident to which he was asked:

''State whether or not, Doctor, there could or might be a causal connection or relationship between the accident as described (being the accident of February 15, 1945) and the patient's condition,

his symptomatology and pathology which you found on the date of your examination?

"*A*. In my opinion there could be a causal relationship, sir. * * * This patient in my opinion is disabled from carrying on any type of work which would require heavy lifting, or work that would require him to be on his feet or sitting for any length of time, or that would require him to bend forwards or backwards. At the present time I do not believe that this patient is able to do a fair honest day's work because of the pathological condition in his left abdominal wall and abdomen.

"*Q*. * * * In your opinion is he or is he not disabled in the general field of labor and industry?

"*A*. He is. * * * He might be able to do some light work, which he could perform while sitting, but certainly to do heavy manual labor is out as of the date of my examination."

In the foregoing and other portions of the record there can be no question but there was competent evidence to present an issue of fact to the department as to plaintiff's disability being due to the injury he sustained on February 15, 1945.

Appellant also asserts that plaintiff's refusal of defendant's offer of surgery made on July 18, 1945, was not reasonable and should bar his alleged right to compensation. The factual aspect of this phase of the case is presented in the last paragraph above quoted from the department's opinion. It is important to note that the department found: "The proposed surgery was in the nature of an *exploratory* operation." There is no showing in the record that the proffered operation was not one fraught with danger to plaintiff's life or health, or that he might not incur extraordinary suffering in consequence thereof. Nor was plaintiff assured that the tendered operation offered a reasonable prospect of

relieving or correcting his incapacity. Instead the operation was, as the department found, purely exploratory. Its purpose was not remedial, but instead by it, defendant hoped to discover the cause of plaintiff's incapacity. Plaintiff's refusal under the circumstances to submit to the operation did not constitute a reason or ground for denying compensation. This is true notwithstanding plaintiff indicated a willingness to submit to the operation provided he was paid compensation for the time he had lost in his employment prior to the offer. He would have been justified in unconditionally refusing to submit to the operation in view of the circumstances disclosed by the record. The applicable rule of law is stated in *Kricinovich* v. *American Car & Foundry Co.*, 192 Mich. 687, as follows:

" 'If the operation is not attended with danger to life or health, or extraordinary suffering, and if, according to the best medical or surgical opinion, the operation offers a reasonable prospect of restoration or relief from the incapacity from which the workman is suffering, then he must either submit to the operation or release his employers from the obligation to maintain him.' "

Such an operation was not tendered plaintiff in the instant case.

Another contention of appellant is that plaintiff is not entitled to compensation when, as the record discloses, he continued to work for defendant for some months after the date of the injury, and through no fault of defendant plaintiff was discharged from his employment because of his refusal to pay union dues. As hereinbefore quoted from the department's opinion: "Plaintiff's employment was terminated November 8, 1945 by his employer for the reason that he had failed to pay his union dues.' The employer's contract with the union pro-

vides for a dismissal of employees who do not maintain their membership in the union by payment of dues." In the instant case during the latter portion of his employment plaintiff was given light work of a character that with intermittent layoffs he was able to perform. During the last months prior to his discharge his earnings were greatly reduced. From the last week in June to November 8th, when plaintiff was discharged his average weekly earnings were less than $10. In discussing this phase of the case appellant states in its brief:

"Plaintiff had been a member of the union and it was a matter entirely between himself and the union as to whether he would pay his union dues or become ineligible for work under the union contract with the defendant by refusing to pay his dues. This is a matter over which the defendant had no control. It was entirely within the control of the plaintiff. * * *

"Plaintiff would not contend that under the present law he may voluntarily quit a favored job that he is capable of performing and *thereby become eligible* for compensation, and yet, in the case at bar, plaintiff's discharge is the equivalent of a voluntary quit."

As applied to the instant case the fallacy in appellant's contention is that plaintiff by being discharged *thereby became eligible* for compensation. The fact is, plaintiff under this record would have been entitled to compensation even though he had continued in the light employment provided by appellant for him at a rate of substantially $10 per week. Prior to his injury he earned as a common laborer an average weekly wage of $56.53, as determined by the department. The governing statutory provision for compensation in the event of partial disability reads:

"While the incapacity for work resulting from the injury is partial, the employer shall pay    *    *    * to the injured employee a weekly compensation equal to 66⅔ per centum of the difference between his average weekly wages before the injury and the average weekly wages he is able to earn thereafter, but not more than $21.00 a week; and in no case shall the period covered by such compensation be greater than 500 weeks from the date of the injury." Workmen's compensation law, part 2, § 10 (2 Comp. Laws 1929, § 8426), as amended by Act No. 245, Pub. Acts 1943 (Comp. Laws Supp. 1945, § 8426, Stat. Ann. 1946 Cum. Supp. § 17.160).

It is obvious under the quoted statutory provision that plaintiff, even though he had continued his employment, would have been entitled to the maximum of $21 weekly compensation in consequence of his loss of earning capacity by reason of partial disability. Therefore appellant was not prejudiced by the amount of compensation awarded. Nor was appellant prejudiced by plaintiff's employment having been terminated. Had plaintiff continued working appellant would have been required to pay the wages which are presumed to have been the fair value of the services plaintiff would have rendered.

In support of its position appellant quoted in its brief from an annotation in 149 A. L. R. 437 the following: "If he (the employee) leaves his new work voluntarily without sufficient excuse, he will not be held to be entitled to compensation during the period of his idleness." To present a fair understanding of the above quotation appellant should have noted the citation therein to *Matter of Jordan* v. *Decorative Co.*, 230 N. Y. 522 (130 N. E. 634), which case held that an employee who suffered an injury which impaired his ability to do heavy work was not en-

titled to compensation if he could obtain and perform lighter work *at an equal earning*. In the instant case there is no contention nor could there be that plaintiff was able to do but refused lighter work at a wage equal to that he received at the time of his injury. Nor do we find any support for appellant's contention in *Kalonsky* v. *Goebel Brewing Co.*, 282 Mich. 638, cited by appellant. A pertinent headnote to that case reads:

"Employee whose thumb was so injured as to prevent him from completely flexing it *but which did not impair his wage-earning ability held,* not to be entitled to an award of additional compensation after being laid off because of union regulation rather than inability to perform his work as operator of pasteurizing machine at a brewery since he has not sustained his burden of showing that disability lessened his earning capacity."

Decision in the *Kalonsky Case* is not in point with the instant case wherein it conclusively appears plaintiff's disability has materially lessened his earning capacity. For a very like reason it may be said that our decision in *Pigue* v. *General Motors Corporation*, 317 Mich. 311, affords appellant no support in the instant case. Unlike the plaintiff in the instant case, Pigue after his injury was given lighter employment at which he was able to earn wages equal to his former wages, and obviously would have done so had he not joined his fellow employees in refusing to work. On the contrary in the instant case had plaintiff continued in his employment he would not have been able, because of his disability, to have earned the same wages in the lighter work afforded him as he earned prior to his accident.

We find no reason urged by appellant and sus-

tained by the instant record which would justify altering the award of compensation made by the department. But our decision would be incomplete, and might be misleading, if we did not disapprove of the following quoted by appellant from the department's opinion:

"Thus, there seems to be only one solution to this dilemma and that is *to compromise.* In our opinion, *an equitable result* can be obtained by awarding compensation benefits to the date of the hearing before the deputy commissioner."

The right to compensation is a matter of law, fixed by the statute. *Holloway* v. *Ideal Seating Co.,* 313 Mich. 267. It is not a right to be determined as a matter of compromise or in an effort to obtain an equitable result. Our affirmance of the award in the instant case is not based on either of the above grounds, but instead because our review satisfies us that the department, under the law of this State, made a proper award as against any objection raised on this appeal. The award is affirmed, with costs to appellee.

CARR, C. J., and BUSHNELL, SHARPE, BOYLES, REID, and DETHMERS, JJ., concurred. BUTZEL, J., did not sit.