John T. FOSTER, Appellant,

v.

WRIGHT–SCHUCHART–HARBOR and Alaska Workers' Compensation Board, Appellees.

No. 5491.

Supreme Court of Alaska.

May 7, 1982.

Larry D. Card and M. Ashley Dickerson, Anchorage, for appellant.

Helene M. Antel and Michael G. Briggs, Ely, Guess & Rudd, Anchorage, for appellees.

Before RABINOWITZ, C.J., CONNOR, BURKE, MATTHEWS and COMPTON, JJ.

OPINION

CONNOR, Justice.

This is an appeal from a decision of the Alaska Workers' Compensation Board.

222

John Foster fell from a ladder while working on the North Slope in 1976 and injured his back. Temporary total disability payments were paid for a month or so and temporary partial disability payments for another nine months, ending in September, 1977.

Foster requested an award for permanent partial disability. This was controverted by the insurance carrier. Following a hearing, the Workers' Compensation Board issued its written order that the carrier "pay the applicant 5 percent permanent partial disability of the whole man (or 5 percent of $60,-000) in the amount of $3,000." The board found that Foster "has suffered from no permanent partial physical disability attributable to this injury" and that he "can return to work as a carpenter with only slight restrictions on heavy lifting." Foster has, the board found, "a subjective preclusion to very heavy lifting which may affect his ability to do a job. Because of the subjective limitation the Board finds the applicant has suffered a psychological disability which would most likely have an effect on his earning capacity as a carpenter. The Board finds that the disability is 5 percent of the whole man."

Foster appealed to the superior court, contending that the board had misapplied the law in determining the amount of compensation and arguing that the board's decision was not supported by substantial evidence. The superior court found that "all of the board's factual determinations are supported by substantial evidence." Without addressing the alleged errors of law, the court affirmed. Foster appeals again.

Foster argues that the board computed compensation based on the "whole man" theory rather than on the basis of the extent of the reduction in his earning capaci-

ty. He adds that when his wage earning capacity is considered, the board must consider the availability of work within his abilities, and that it failed to do so, or, if it did, that the evidence did not support its implicit conclusion that alternative employment was available. He adds that the $60,-000 limit on permanent disability payments should not have been applied to him because it was not in force at the time of his injury.[1]

The first issue raised by Foster is whether the board's award was erroneously based on the discredited "whole man" theory rather than on the reduction in his earning capacity.[2] The board found "no permanent partial physical disability," but "a psychological disability which would most likely have an effect on his earning capacity as a carpenter.... [T]he disability is five percent of the whole man."

After a further discussion of the extent of the disability, the board went on to discuss the extent of Foster's wage earning capacity. It said:

"Problems arise in relating this to loss in wage earning capacity. We know that many persons who come before the Board, and a few that sit on the Board, have continued to work hard jobs under worse pain. The whole problem comes down to whether you want to work or it pays enough not to work.

If one has only slight restrictions to very heavy lifting, and it is only subjective, it would appear that he has no loss of wage earning capacity. If he has these subjective limitations, he may not seek jobs that would be available requiring heavy lifting. The Board therefore feels there must be some recognition of the psychological overlay problem.

1. See AS 23.30.190(b). A similar limitation in force at the time of statehood was repealed in 1975 and was reinstated in 1977.

2. Under the "whole man" theory, an award is based on the extent of physical disability. Under the "earning capacity" theory, the award is for economic loss as measured by the reduction in earning capacity. We have previously decisively rejected the "whole man" theory. See

Hewing v. Alaska Workmen's Compensation Board, 512 P.2d 896, 899–900 (Alaska 1973); Manthey v. Collier, 367 P.2d 884, 888–89 (Alaska 1962). In J. B. Warrack Co. v. Roan, 418 P.2d 986 (Alaska 1966), for example, we approved a finding of permanent total disability in the face of a finding of only 40–45% physical impairment, based on the applicant's inability to perform jobs within his physical capacities.

He has not sought any work up to this time since the injury; however, we do not attribute this to the injury; we attribute it to the fact that he is trying to perfect his claim. Therefore, the loss of wage earning capacity due to the psychological overlay is set at 5 percent."

It appears to us that the board was aware of the need to set compensation based on reduction in wage earning capacity. On the other hand, it is difficult to determine from the board's written decision the basis on which it decided that Foster's wage earning capacity had decreased by five percent, other than the five percent disability to the "whole man."

■ In *Hewing v. Alaska Workmen's Compensation Board*, 512 P.2d 896, 899 (Alaska 1973), we held where post-injury earnings were rejected as the indication of wage earning capacity, the board "should have supported its ultimate finding of decrease in wage-earning capacity with subsidiary findings relating to the other factors and circumstances referred to in AS 23.30.-210(a)..."[3] These "other factors" include the employee's age, education, industrial history, trainability, and availability of suitable work in the community. 512 P.2d at 899. On appeal of the same case following remand, we again emphasized the need for a serious inquiry into the actual facts of the partially disabled worker's employment prospects. *See Hewing v. Peter Kiewit & Sons*, 586 P.2d 182 (Alaska 1978). In our

opinion, the board's summary treatment of the wage earning capacity issue requires a remand, particularly in light of the identical five percent ratings for psychological and economic disability, the use of "whole man" terminology in the actual award, and the overall evidence in the case.[4]

■ We also find that the board abused its discretion both in its decision to award a lump sum payment and in its computation of that lump sum. A person with an unscheduled permanent partial disability is to be awarded:

"66⅔ per cent of the difference between his average weekly wages and his wage-earning capacity after the injury in the same employment or otherwise, payable during the continuance of the partial disability, but subject to reconsideration of the degree of the impairment by the board on its own motion or upon application of a party in interest; *whenever the board determines that it is in the interest of justice, the liability of the employer for compensation, or any part of it as determined by the board, may be discharged by the payment of a lump sum.*" (emphasis added).

AS 23.30.190(a)(20).

In *Absher v. State, Dept. of Highways*, 500 P.2d 1004 (Alaska 1972), we discussed the purpose of the lump sum provision and determined that it should be used "when the use of the first part of AS 23.30.190(20)

---

**3.** AS 23.30.210(a) states:

"Determination of wage-earning capacity. (a) In a case of partial disability under § 190(20) or 200 of this chapter the wage-earning capacity of an injured employee is determined by his actual earnings if the actual earnings fairly and reasonably represent his wage-earning capacity. If the employee has no actual earnings or his actual earnings do not fairly and reasonably represent his wage-earning capacity, the board may, in the interest of justice, fix the wage-earning capacity which is reasonable, having due regard to the nature of his injury, the degree of physical impairment, his usual employment, and any other factors or circumstances in the case which may affect his capacity to earn wages in his disabled condition, including the effect of disability as it may naturally extend into the future."

**4.** We observe that the board considered it "apparent" that Foster is malingering. We are somewhat at a loss to understand this finding in view of the additional finding that he is permanently partially disabled. The fact that others might continue to work with the same pain is irrelevant, given the finding of an actual disability. If the board was persuaded that Foster's complaints were fraudulent, or that his pain was insufficient to keep him from returning to his old job, it should have found no disability. Having found the disability, it is incumbent upon the board to devote the same care to the determination of the extent of the reduction in Foster's wage earning capacity as it would in any other case. *See Vetter v. Alaska Workmen's Compensation Board*, 524 P.2d 264 (Alaska 1973).

would produce an unreasonable result," *i.e.* a worker with an unscheduled injury would recover more than a worker with a more serious scheduled injury. 500 P.2d at 1005. In the present case, the board's conclusory finding that "[i]t is in the interest of justice to pay the applicant in a lump sum" gives no indication as to the reasonableness or unreasonableness of an award under the first part of the statute. Thus, if on remand the board again decides to pay a lump sum, the basis for that decision must be articulated. *See Fields v. Kodiak City Council*, 628 P.2d 927, 932 (Alaska 1981).

█ The board arrived at the $3,000 lump sum award by applying its five percent rating to the amount of $60,000.[5] We have previously held that the board may "base the lump sum award on the relationship between impaired earning capacity and the statutory maximum award." *Absher v. State Dept. of Highways*, 500 P.2d 1004, 1006 (Alaska 1972). *Absher* is not applicable where, as here, there was no statutory maximum in effect at the date of injury. The board itself recognized this in a decision issued just three months before the decision in the present case:

> "[A]t the time of applicant's injury there was no maximum applicable to the sum payable for unscheduled permanent partial disability. He is therefore entitled to receive 66⅔ percent of the difference between his average weekly wage and his wage earning capacity after the injury, in the same employment or otherwise."

*Giordano v. Ka-Su Construction*, Alaska Workers' Comp. Bd. Case No. 75–06–0524 at 3 (1978). Thus, the board's use of the $60,000 figure, in connection with the erroneous five percent rating, was error.

The superior court's judgment is reversed and this case is remanded for further remand to the Worker's Compensation Board for a redetermination of the extent of the reduction in Foster's wage earning capacity and for a further explanation of the basis for the board's determination, using the factors deemed relevant by statute and our previous decisions.

REVERSED and REMANDED.

---

5. At the time of the hearing, the statutory maximum award was $60,000. AS 23.30.190(b).

However, at the time of Foster's injury, there was no statutory maximum in effect.