In the Matter of the Claim of LOUIS S. CROCE, Appellant, against FORD MOTOR COMPANY, Respondent. WORKMEN'S COMPENSATION BOARD, Respondent.

Argued March 3, 1954; decided May 27, 1954.

*J. Harry Tiernan, Jr., Walter A. Kirkpatrick* and *Joseph W. Kirkpatrick* for appellant. I. The decision of the board which was affirmed by the Appellate Division violates the clear and explicit provisions of subdivision 5-a of section 15 of the Workmen's Compensation Law, and is in direct conflict with decisions of this court construing those provisions. (*Matter of Santo* v. *Symington Mach. Co.*, 237 App. Div. 242, 262 N. Y. 653; *Matter of Wood* v. *Seneca Iron & Steel Co.*, 246 App. Div. 871, 271 N. Y. 642; *Matter of Jordan* v. *Decorative Co.*, 230 N. Y. 522; *Matter of Boucher* v. *Starrett Bros. & Eken*, 238 App. Div. 880; *Matter of Block* v. *Ready-Froelich*, 240 App. Div. 9, 264 N. Y. 618; *Matter of Merconte* v. *Associated Operating Co.*, 241 App. Div. 640; *Matter of Matise* v. *Munro Waterproofing Co.*, 293 N. Y. 496; *Matter of Mullins* v. *Atlantic Basin Iron Works*, 271 App. Div. 854, 297 N. Y. 550; *Matter of Dalberth* v. *Iuppa & Battle Co.*, 262 N. Y. 537; *Matter of Mikno* v. *Endicott Johnson Corp.*, 278 App. Div. 598; *Matter of Hermon* v. *Pugh*, 272 App. Div. 985; *Matter of Moses* v. *Mrs. Dixon's Products Co.*, 277 App. Div. 820; *Matter of Wood* v. *Board of Educ. of City of New Rochelle*, 265 App. Div. 430.) II. The construction by this court of the provisions of subdivision 5-a of section 15 of the Workmen's Compensation Law in the preceding point is sound and proper under the accepted canons of statutory construction and should be adhered to on this appeal. (*Kelly* v. *Supreme Council*, 46 App. Div. 79; *Astor* v. *Merritt*, 111 U. S. 202; *Lamport* v. *Smedley*, 213 N. Y. 82; *People ex rel. Sheldon* v. *Board of Appeals of City of N. Y.*, 234 N. Y. 484; *Mabie* v. *Fuller*, 255 N. Y. 194.) III. The board's formula approved by the Appellate Division constitutes invalid legislation. (*Matter of Colonial Liq. Distributors* v. *O'Connell*, 295 N. Y. 129; *Kane* v. *Walsh*, 295 N. Y. 198; *Lawrence Constr. Corp.* v. *State of New York*, 293 N. Y. 634; *Saltser & Weinsier* v. *McGoldrick*, 295 N. Y. 499; *Matter of Hering*, 196 N. Y. 218; *Matter of Metropolitan Life Ins. Co.* v. *Boland*, 281 N. Y. 357; *People* v. *Crane*, 214 N. Y. 154; *McKuskie* v. *Hendrickson*, 128 N. Y. 555; *Johnson* v. *Hudson*

*R. R. R. Co.,* 49 N. Y. 455.) IV. The board's formula is unsupported by any legislative guides or standards. (*People* v. *Klinck Packing Co.,* 214 N. Y. 121; *Matter of Lyons* v. *Prince,* 281 N. Y. 557; *Matter of Small* v. *Moss,* 279 N. Y. 288; *Matter of Fink* v. *Cole,* 302 N. Y. 216.)

*Benedict T. Mangano* for Ford Motor Company, respondent. The court below did not err in affirming the decision of the board imputing to the claimant-appellant earnings commensurate with his demonstrated wage earning capacity for the days he did no work for reasons unrelated to his disability. (*Matter of Wilson* v. *General Motors Corp.,* 298 N. Y. 468; *Matter of Industrial Comr.* [*Siquin*] v. *McCarthy,* 295 N. Y. 443.)

LEWIS, Ch. J.   This appeal is by our permission from an order of the Appellate Division unanimously affirming an award of workmen's compensation based on reduced earnings due to partial disability for the period July 31, 1950, to April 9, 1951. There is no dispute as to the fact of injury, the disability, or the compensability thereof.   Our inquiry goes to the single question whether the Workmen's Compensation Board correctly computed claimant's wage-earning capacity subsequent to his injury, in determining the amount of compensation payable for his partial disability.

Prior to July 19, 1950, claimant was employed as a wet sander in the respondent Ford Motor Company's plant at Buffalo.   On that date claimant became disabled as the result of a skin eruption on the right elbow and arm which was found by the board to be foliculitis contracted in, and due to the nature and conditions of, his employment.   After two weeks of total disability claimant returned to work at the respondent's Buffalo plant where, due to a continuing partial disability resulting from the skin disorder, he was given a type of work different from that which he had formerly done and at a wage scale different from that in effect on his previous type of employment.

During the period of his partial disability — for which compensation has been awarded — claimant worked a total of thirty-six weeks.   For most of that time, he worked a five-day week, which was the same as his average working period prior to his disability.   However, in seven of the weeks between July 31,

1950, and April 9, 1951, respondent's plant was closed down for one or more days due to a strike in Detroit which stopped production in respondent's Buffalo plant.

The Workmen's Compensation Law (§ 15, subd. 5) provides: " 5. Temporary partial disability. In case of temporary partial disability resulting in decrease of earning capacity, the compensation shall be two-thirds of the difference between the injured employee's average weekly wages before the accident and his wage earning capacity after the accident in the same or another employment but shall not exceed in total five thousand five hundred dollars." Section 15 (subd. 5-a) provides: " Determination of wage earning capacity. The wage earning capacity of an injured employee in cases of partial disability *shall be determined by his actual earnings,* provided, however, that if he has no such actual earnings the board may in the interest of justice fix such wage earning capacity as shall be reasonable, but not in excess of seventy-five per centum of his former full time actual earnings, having due regard to the nature of his injury and his physical impairment " (emphasis supplied).

The Workmen's Compensation Board found claimant's average weekly wage *prior* to disability had been $77.45. However, in determining his wage earning capacity *after* disability, the board not only considered earnings actually received by claimant during the period in question, but also found that " In computing the reduced earning rates the fact that the plant was closed on certain days should be taken into consideration. Therefore, Louis S. Croce [claimant] is to be charged with wages *he would have received* if the plant had not closed during those days. A daily rate of $12.20 is added to his earnings for each day that the plant closed." (Emphasis supplied.) By thus increasing claimant's " wage earning capacity after the accident ", the board reduced the amount of compensation which had been awarded by the compensation referee under section 15 (subds. 5, 5-a) of the Workmen's Compensation Law (*supra*).

The claimant-appellant contends that, under section 15 (subds. 5, 5-a) of the statute (quoted *supra*) his wage earning capacity after disability should have been determined solely on the basis of *actual earnings* received by him during the period of disability, without regard to what he " would have received " if

the plant had not been closed on certain days during his partial disability. Respondent, on the other hand, has taken the position, adopted by the Appellate Division, viz., "Reduction of earnings because of economic conditions is not an element to be considered in fixing an award (*Matter of Mikno* v. *Endicott Johnson Corp.*, 278 App. Div. 598). Quite evidently the Legislature intended that the term ' actual earnings ' should be related to ordinary full time employment, whatever that may be, otherwise an employer would be charged with consequences which had nothing to do with an industrial accident."

Appellant and respondent agree that the portion of section 15 (subd. 5-a, *supra*) which provides that the board may fix a reasonable wage earning capacity when there have been no " actual earnings ", is not applicable to this case which is controlled by the following provision of that statute, viz., " The wage earning capacity of an injured employee in cases of partial disability shall be determined by his *actual earnings* " (emphasis supplied).

On several occasions we have reviewed cases involving the interpretation of the phrase " actual earnings " on which occasions we have indicated that, for the purpose of compensation, earnings *actually received* by a claimant are the statutory measure of wage earning capacity after disability. (See *Matter of Santo* v. *Symington Mach. Co.*, 262 N. Y. 653; *Matter of Wood* v. *Seneca Iron & Steel Co.*, 271 N. Y. 642.)

In *Matter of Matise* v. *Munro Waterproofing Co.* (293 N. Y. 496) claimant — who sought compensation for partial disability — established average weekly earnings before disability of $53.85. During the period of disability, the wages actually received by claimant amounted to $17 per week. However, relying upon medical evidence presented to it, the board found that claimant had an earning capacity after disability which was 50% of his former full-time earnings. In annulling the award made upon that finding, this court relied upon subdivision 5-a of section 15 of the Workmen's Compensation Law. We pointed out that, prior to the enactment of that statutory provision defining "wage earning capacity," evidence of " actual earnings during the period of disability was not the sole admissible evidence " of decreased earning capacity for

the purpose of partial disability compensation. In addition it was said (p. 500): " Since the addition to the statute [of § 15, subd. 5-a], where claimant has no actual earnings the Board may still take and consider evidence of capacity and fix a reasonable compensation rate if not in excess of 75% of the former full time actual earnings of the injured employee (*Matter of Sammis* v. *Queens Borough Gas & Elec. Co.*, 257 App. Div. 58). *But where actual earnings during the period of the disability are established, wage earning capacity must be determined exclusively by the actual earnings of the injured employee without evidence of capacity to earn more or less during such disability period, as part of the formula by which the compensation rate is determined* (*Matter of Santo* v. *Symington Machine Co.*, 237 App. Div. 242; *Matter of Smith* v. *Tonawanda Paper Co., Inc.*, 238 App. Div. 690; *Matter of Dalberth* v. *Iuppa & Battle Co.*, 262 N. Y. 537)." (Emphasis supplied).

In the case we now review we conclude that claimant's wage earning capacity after disability should be determined on the basis of wages *actually received by him* during the period of partial disability, without regard for amounts the board thought claimant would have received had not respondent closed its plant on certain days during the period in question.

In affirming the action of the compensation board charging claimant with wages he would have made, the Appellate Division based its decision upon the conclusion that " otherwise an employer would be charged with consequences which had nothing to do with an industrial accident " in violation of the purpose of the Workmen's Compensation statute. That is the same argument advanced in this court, without success, at the time we considered *Matter of Santo* v. *Symington Mach. Co.* (*supra*). With regard to the claim, made in the *Santo* case — that earnings actually received reflect in part general economic conditions and hence are not a component measure of wage earning capacity under the compensation statute — the Appellate Division, in deciding that case (237 App. Div. 242), said at page 245: " A claimant who sustains injuries when wages generally are high and who is thus earning a high rate of pay, receives compensation at a disproportionately high rate whenever such compensation continues into a period when there is a general lowering

of the scale of wages; conversely, a claimant who sustains injuries when wages generally are low and his earnings are small, receives compensation at a disproportionately low rate if his compensation continues into a period when the general level of the labor market has risen. In the former instance, the employee profits at the expense of the employer; in the latter, the advantage is with the employer to the disadvantage of the employee. Probably such a result was not contemplated by the Legislature, for the Workmen's Compensation Law seeks to achieve an equitable adjustment between employer and employee. *However that may be, the formula as to wage rate has been stated in the statute in clear and unmistakable language. If any change is to be brought about, it must be by amendment to the statute. The legislative, not the judicial, function must be invoked*'' (emphasis supplied).

Despite that statement, made more than twenty years ago, and despite cases (discussed *supra*), subsequently decided by this court in which we have upheld wages *actually received* as the true test of wage earning capacity, the Legislature has not seen fit to change or amend the clear language of the Workmen's Compensation Law (§ 15, subd. 5-a), upon which our present decision turns. In that circumstance, and in view of prior decisions of this court, we think the board erred in charging claimant with wages not received by him in determining his wage earning capacity for the purpose of partial disability compensation.

Accordingly, the order of the Appellate Division should be reversed, the award of the Workmen's Compensation Board annulled, with costs, and the matter remitted to the Workmen's Compensation Board for an award not inconsistent with this opinion.

DESMOND, J. (dissenting). The measure of workmen's compensation payments for temporary partial disability is '' two-thirds of the difference between the injured employee's average weekly wages before the accident and his wage earning capacity after the accident '' (Workmen's Compensation Law, § 15, subd. 5). Subdivision 5-a of section 15 says that '' wage earning capacity '' of such temporarily and partially disabled employees shall be determined by '' actual earnings '', if any.

These two subdivisions, read together, mean, to my mind, that in measuring after-accident " earning capacity " the board must take the wage rate the worker actually earns, not some theoretical, potential, or suppositious higher or lower rate. Thus, if a worker made $90 per week before injury and $60 afterwards, he is to be awarded two thirds of the difference, or $20 per week. But if that same man, shown by actual figures to have an after-accident earning capacity of $60 per week, is idle for a period, because of a strike of someone supplying materials to his employer, the latter fact does not change the physical, undisputed fact of his actual earning capacity of $60 per week. If that were not so, his " earning capacity ", which in fact remained at $60 per week, would have to be determined, for that period, at zero, just because the plant had to close temporarily for reasons not connected with his " earning capacity ". If general economic conditions, or fluctuation in demand, or change of market, reduces, permanently or semipermanently, days of employment, a worker's " earning capacity " is in fact reduced. But if his plant's shutdown is because of some mechanical failure therein or because of some strike in a supplier's plant, the worker's " actual earning capacity " remains unchanged by such temporary stoppages. I do not think any of the cited cases contradict that.

I favor affirmance.

CONWAY, DYE and FROESSEL, JJ., concur with LEWIS, Ch. J.; DESMOND, J., dissents in an opinion in which FULD and VAN VOORHIS, JJ., concur.

Order reversed, etc.