In the Matter of the Claim of WILLIAM T. ROBERTS, Respondent, against GENERAL ELECTRIC COMPANY, Respondent. SPECIAL FUND FOR REOPENED CASES, Appellant.

Third Department, May 29, 1958.

John M. Cullen for appellant.

*Roland C. Radice* and *Lawrence Steck* for General Electric Company, respondent.

*Louis J. Lefkowitz, Attorney-General* (*Daniel Polansky* and *Roy Wiedersum* of counsel), for Workmen's Compensation Board, respondent.

*Leon Novak* for claimant-respondent.

REYNOLDS, J. This is an appeal from a decision and award of the Workmen's Compensation Board. Claimant suffered a back injury on December 30, 1944, in a fall from a ladder. He was totally disabled for a period of about four months, after which he returned to work for the same employer at apparently lighter duties. His case was closed on November 5, 1947 with a finding of permanent partial disability but was reopened on July 2, 1953 pursuant to a medical report which set forth the need for further treatment. Following this, hearings were held at which the employer and carrier were discharged from liability and the Special Fund for Reopened Cases was found responsible. On June 11, 1954 an award was made against the Special Fund for various periods of disability suffered by the claimant between July 27, 1953 and January 7, 1954, and the case was again closed. On October 1, 1954 the claimant was compelled by his employer to retire on a pension, being then 65 years of age, and he now receives $212 per month in pension and social security benefits. The record indicates that claimant's rate of pay, even though for " lighter duties ", during the period 1944 through 1954, was the same as his preaccident rate of pay. Notwithstanding his disability, the claimant seems to have been rehabilitated to successful employment. Upon his retirement he made unsuccessful efforts to find work. His case was reopened by a letter from his attorney dated November 10, 1954. The letter states, as the reason for reopening the case, that Mr. Roberts has " retired from work." Subsequently, an award was made for reduced earnings for the period commencing October 1, 1954.

The medical evidence is to the effect that he was able to do " light work " (June, 1953), and that he was " working and may continue " (June, 1954). In May, 1955, his physician reported that he was " able to do usual work * * * but should not do heavy manual work ". It thus appears rather conclusively that he is physically qualified to perform the same work that he did during the 10 years subsequent to his injury. Indeed, one physician attributed the " minimal disability " in

his back more to the " arthritic changes " in his vertebrae than to the " old ·healed fracture ". His own physician conceded " hypertrophic arthritis of lumbar spine ".

In the problem presented here, the intent of the Workmen's Compensation Law must be kept in clear focus. Section 10 of the Workmen's Compensation Law provides that employers are to secure payments to their employees for their *disability*. " Disability " is defined in section 37 of the law at least as " the state of being disabled from earning full wages at the work at which the employee was last employed." That the intent of the law was to provide payments to injured employees during periods of disability, causally connected with an industrial accident, seems clear.

Where the cessation of employment is apparently due solely to compulsory retirement on a pension because of age, and other causes unrelated to disability from an industrial accident, to pay compensation benefits would result in a situation where employees would obtain retirement benefits supplementing, as in this case, their pension and social security payments, without the employee being compelled to show causal connection between the disability and the inability to find work. Such would not seem to be the intent of the Workmen's Compensation Law.

There is nothing in the record to indicate that claimant's reduced earning capacity, or lack of employment, following his retirement, was due to his disability. On the contrary, the inference is, both from the record as a whole and the limited amount of testimony on the subject, that claimant's failure to get employment was due to his age and to general economic conditions. There is no testimony, for instance, that claimant " coupled his request for employment with notice that the labor must be light " (*Matter of Jordan* v. *Decorative Co.*, 230 N. Y. 522, 525). When asked directly why he didn't get a job at the places he applied at, the claimant simply replied: " They didn't need any more help." Claimant testified that it was " pretty hard to get anything * * * suitable ", but no effort was made to determine whether this was due to his age, his disability, general economic conditions or a combination of these and other factors. It may well be that the cause of the claimant's unemployment presents a problem of proof. Here, however, the inference from the record as a whole is that the loss of wage-earning capacity is *not* due to the claimant's disability. When this is the case, the court has no choice but to vacate the award and send the matter back to the board for proof, if possible, of some causal connection between the claimant's disability

and his inability to obtain employment (*Matter of De Vito* v. *West Virginia Pulp & Paper Co.*, 286 App. Div. 1057; see, also, *Matter of Hermon* v. *Pugh*, 272 App. Div. 985).

We do not believe that the addition of subdivision 5-a to section 15 of the Workmen's Compensation Law in 1930 has entirely done away with the need for a causal connection between the disability and the reduction, or loss, of wages. This certainly would not seem to be the intent of those who drafted the legislation. For instance, in the supporting memorandum of Industrial Commissioner Frances Perkins to Governor Roosevelt, it is stated, relative to the latter half of subdivision 5-a, that " This covers the type of case where a partly incapacitated worker is unable to return to his former type of work and *due to the resultant condition* experiences extreme difficulty in securing any work at all on which the Board could base an estimate of his present earning capacity " (Bill jacket, L. 1930, ch. 316; emphasis added). The phrase which has been emphasized in this quoted portion indicates to us that the parties who framed subdivision 5-a did not mean to tamper with the traditional concept that compensable wage-loss must be the result of, or due to, the disability. Nor does *Matter of Croce* v. *Ford Motor Co.* (307 N. Y. 125) militate against such reasoning. In that case there was no dispute as to the causal connection between the disability and the original reduction in wages. When Croce's wages were still further reduced because of a strike, he felt that his compensation payments should be accordingly increased. The Court of Appeals held for him, on the relatively narrow issue of statutory interpretation. The court cannot believe that this decision did away with the fundamental need for some sort of causal connection between disability and reduced earnings in a situation like that presented by the record herein.

The award should be reversed, with costs, and the matter remitted to the Workmen's Compensation Board for further proceedings.

Foster, P. J., Bergan, Gibson and Herlihy, JJ., concur.

Award reversed, with costs to the appellant against the Workmen's Compensation Board, and the matter remitted to the Workmen's Compensation Board for further proceedings.