■ In the Matter of the Claim of JOHN A. HAWES, Appellant, v DIME SAVINGS BANK OF NEW YORK, Respondent. WORKERS' COMPENSATION BOARD, Respondent.—Yesawich, Jr., J. Appeal from a decision of the Workers' Compensation Board, filed March 14, 1988, which ruled that claimant's employer had discharged him in violation of Workers' Compensation Law § 120 but denied his claim for workers' compensation benefits on the ground that he had sustained no damages.

Claimant worked as a security guard for Dime Savings Bank (hereinafter the Bank) for 15 years. On October 7, 1983, while at a branch office of the Bank delivering money contained in a special security briefcase, claimant slipped and fell in a puddle of water left by a leaking air conditioner. A tear gas canister, located in the briefcase, exploded and sprayed him with tear gas. Claimant suffered dizziness, headaches and injuries to his knee, back and ear as a result of the fall and exposure to the gas. On August 8, 1984, he was classified as suffering from a permanent partial disability due to a schedule loss of 15% of the use of his right leg. Claimant thereafter received reduced earning compensation benefits of $55.58 per week.

On August 17, 1984, claimant telephoned the Bank to inform it that he was able to return to work. He was told, however, that he had been fired, effective July 6, 1984. Subsequently, claimant received a letter from the Bank notifying him of his discharge. Claimant then filed a discrimination complaint with the Workers' Compensation Board charging that the Bank had discharged him in retaliation for filing a workers' compensation claim in violation of Workers' Compensation Law § 120.

At the hearing, a Workers' Compensation Law Judge (hereinafter WCLJ) determined that the Bank had violated Workers' Compensation Law § 120. A second hearing was scheduled to determine claimant's damages resulting from his discriminatory discharge. At this second hearing, the WCLJ refused to

permit claimant to introduce evidence regarding his lost earnings. The WCLJ held that because claimant suffered from a permanent partial disability and received reduced earning compensation benefits, he must have been and continues to be incapable of returning to his position as a security guard. The WCLJ further confirmed the earlier finding that the Bank had violated Workers' Compensation Law § 120, and fined it $100. Following affirmance by the Board, claimant appeals.

Initially, the Bank challenges the Board's finding that it violated Workers' Compensation Law § 120 as not supported by substantial evidence. It did not appeal or cross-appeal from that determination and, therefore, as a nonappealing party, it may not secure affirmative relief from this court (see, *Hecht v City of New York,* 60 NY2d 57, 61-62). In any event, the Bank's argument is without merit. Claimant testified, and a friend confirmed the testimony, that a Bank official warned him not to file for workers' compensation benefits for it could cost him his job. Additionally, two other Bank officials disclosed that no employee had ever been discharged for a prolonged absence, especially one caused by an on-the-job injury. Finally, although the Bank assertedly fired claimant five months after he filed his compensation claim because it needed increased manpower, inexplicably it never checked to see if claimant was physically able to return to work. As the Board's decision is supported by substantial evidence, it is conclusive (see, *Matter of Axel v Duffy-Mott Co.,* 47 NY2d 1, 6).

The Board's determination, that because claimant was classified as having a permanent partial disability and received reduced earning compensation benefits he was not qualified to perform the duties of his employment and therefore suffered no damages, finds no support in either the Workers' Compensation Law or relevant case law. No provision in the Workers' Compensation Law suggests that a worker classified as having a permanent partial disability is incapable of resuming his former employment. In fact, the statute suggests otherwise. Workers' Compensation Law § 15 (8) "was quite evidently designed not only to induce employers to employ handicapped persons but also to encourage the latter to seek employment" (*Matter of Conway v Aluminum & Brass Co.,* 279 App Div 82, 85, affd 304 NY 571). This provision encourages a worker to return to his employment "even after he has been physically handicapped by injury" (Workers' Compensation Law § 15 [8] [a]). Remaining sections of the statute merely provide that a permanently partially disabled claimant's actual earnings determine his earning capacity (Workers' Compensation Law

§ 15 [5-a]). The term "actual earnings" " 'should be related to ordinary full time employment, whatever that may be' " *(Matter of Tisko v General Aniline & Film Corp.,* 27 AD2d 619, 620, quoting *Matter of Croce v Ford Motor Co.,* 282 App Div 290, 292, *revd on other grounds* 307 NY 125). And where the injured employee does not return to work, the Board may fix a reasonable sum (Workers' Compensation Law § 15 [5-a]). The fact that a method exists for calculating the reduced earnings of a permanently partially disabled employee does not mean that an employee suffering from such a disability is necessarily incapable of resuming his former employment.

As for the relevant case law, it too does not lend itself to the Board's conclusion that an employee who has been classified as permanently partially disabled cannot return to work *(see, Doin v North Am. Carbide,* 112 AD2d 499, 500; *see also, Matter of Tisko v General Aniline & Film Corp., supra; cf., Matter of Cormier v Champlain Val. Physicians Hosp. Med. Center,* 96 AD2d 634, 635).

Nor is the record evidence categorical on this issue. There is evidence not only that claimant was able to return to work and perform the duties previously assigned to him, but also that he had been denied Social Security disability benefits because "[his] condition does not prevent [him] from performing [the job of security guard]". In addition, in his third-party action against the manufacturer of the security briefcase for its alleged malfunction, claimant maintained that he was unable to return to work. As the record is at best conflicting, a hearing must be held to determine whether claimant, on the date of his discharge and for how long thereafter, was physically able to perform the duties of his former employment as a security guard.

Decision modified, with costs to claimant against the employer, by reversing so much thereof as held that claimant had sustained no damages; matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this court's decision; and, as so modified, affirmed. Mahoney, P. J., Casey, Yesawich, Jr., Levine and Harvey, JJ., concur.